Tiie Chief Justice
delivered the opinion of the court.
This was a proceeding under the act of 1868 relating to the unlawful detention of lands.
The complaint is that Stephen Seymour unlawfully withholds the possession of certain real estate, described as follows: a certain dwelling-house, formerly used as a schoolhouse, with the outbuildings near by, standing west of the public road running from the St. Augustine road in the direction of Drifton; also, the land adjoining thereto, which is occupied by him, containing by • estimate five acres of land, with the appurtenances, lying and being in the 'county of Jefferson.
To maintain the proceeding .plaintiffs offered in evidence an agreement in writing, under seal, dated January 1, 187"?!, signed by Asa May (since deceased) of the first part and Stephen Seymour of the second part, to the effect that the party of the first part “agrees to rent to the party of the second part twenty-five acres of land and houses for the said party of the second part to live in during the present year; and the said party of the second part agrees to pay as rent for the said land and houses one bale of lint cotton,” &e. This was signed by Asa May and by Seymour by making his mark
This paper was objected to as evidence because it did not describe the premises, but only a quantity of land. The court received the paper subject to the condition that the premises should be identified with those mentioned in the complaint b}r parol evidence. Testimony was introduced tending to show that the land referred to in the lease was the same land upon which the defendant then resided, a part of which, with the house he occupied, is the five acres sought to be recovered. It was further shown by testimony of both parties, that defendant had resided on the same place over ten years; that he claimed to have bought it and paid Alvin May for it, and that Asa May had never been in possession. It appears by the testimony on both sides that- the defendant could not write his own name; that he did not and could not read the lease, and. it was not read to him, and he did not know what it contained when lie signed it.
Defendant testified that he bought the place from Alvin Jifa}7 ten or eleven years ago, and paid him for it, and went into possession, and has been living there ever since; that after Mr. 'Alvin May had been “sold out,” and Asa May bought his property, the latter claimed that he bought this land in controversy, and wanted defendant to give it np to. him or pay rent, but defendant refused. May often mentioned the matter, and “kept after him about it,” and wanted him to sign a paper agreeing to pay rent. Defendant finally told Mr. May that if he, May, owned the land he would pay rent, but would not pay until it was decided. Shorty afterwards, Edwards, May’s agent, came and wanted him to sign a paper, which he said was a “paper for the rent.” He then told Edwards that the land was in controversy between him «and May, and if it was May’s land he was willing to paj7 rent, but that if it was his he would not pay any rent, and with this understanding he signed the paper. Toward the close of the year Mr. May came or sent to him to pay the rent, which he refused, and told him the cotton was gathered and housed on the place, but defendant refused to turn it out. May took no steps to collect the rent. Defendant afterwards ginned the cotton and sold it. Never surrendered the possession of any part of the land to May, who sowed oats there without his consent.
Plaintiffs’ counsel asked the court to charge the jury, that “if the jury find that the defendant was ignorant of the legal effect of the lease entered into by him, that ignorance does not excuse him, and he is bound by the lease, but if he was induced to enter into the lease by any fraud or deceit of the plaintiffs’- testator, then the lease is not binding upon him.” This instruction was refused, and the court charged “that if the jury believed from the evidence that the defendant did not know that by signing the paper read in evidence he was acknowledging the title of complainant to the land in question, and that he never intended by signing said paper to acknowledge the title of Mr. May, then said paper does not bind him to the extent of such acknowledgment.” To this the counsel of the plaintiffs expo^'l.
The jury found for the defendant, and a motion for a new trial being denied, and judgment having been entered thereon, plaintiffs appealed.
The errors assigned are that the court erroneously charged the jury as to the question of title being involved; that the court erred in refusing the instructions asked for by plaintiffs; that ignorance of the defendant as to the contents of the lease does not discharge him from its obligations, in the absence of fraud or deceit, or other unfair conduct on the part of lessor, and the ruling of the court misled the jury.
The jury did not find that the land described in the complaint had' been taken possession of, or that the possession was held under the provisions of the lease.
The defendant is shown to he an ignorant and illiterate person. He could neither read nor write; did not and could not read the lease; was not informed what it contained; it was not read to him, and he did not know its contents, but was induced, after being much importuned, to make liis mark to it. He claimed, from first to last, that he had bought and paid for the land, had been in possession for over ten years cultivating it, and it was the home of himself and his family; and this he testified to, and this was not contradicted. The complainants’ testator claimed also to have bought the land when Alvin May was “sold out,” and under this claim set about getting possession and ousting the defendant. This was effected so far as to obtain “his mark” to the writing, as appears in the testimony. Why was not the “land and houses” designated in the paper as the place where the defendant then lived? Was it presumed that lie might have intelligence enough to ask for the reading of it, and that he might, in that event, refuse to surrender the property he claimed lo have purchased and paid for, and claimed to own as against Asa May? And did the jury believe that the defendant had knowingly signed a paper, by the terms of which he would surrender his rights as a purchaser in possession, and acknowledge *189 and recognize a landlord whose superior right he persistently denied? Did the defendant act with that prudence and caution which would have been exercised by one capable of judging of the effect of his acts ?
In this posture of affairs and this condition of the parties, with all this evidence before the jury, we are not inclined to disturb a verdict of a jury declaring the lease null, in that it is not the voluntary act of the defendant. In the language of Chief Justice Parker, in Dwight vs. Pomeroy, 17 Mass., 326, “Ignorance will be protected, if any advantage shall be taken of it by superior cunning or sagacity, * * * by the rules of law, as they now stand."
That this defendant, according to this testimon}', knowingly placed it in the power of the lessor to dispossess him, and voluntarily surrendered his right to defend his possession or Iris title, if he had any, cannot reasonably be pretended. He obtained no benefit whatever- from the lease, and has never ratified it.
As to the error alleged, that the court refused to instruct the jury, as requested, that the defendant’s ignorance of the legal effect of the lease did not relieve him from such effect unless he was induced to enter into it by fraud or deceit of the testator, the general proposition may be correct, (and would be applicable to one phase of the case if coupled with the further proposition that it .should be shown that the defendant knew the terms of the writing,) still> the instruction, as prayed for, if given could not have properly produced any other verdict upon the evidence.
As to the charge of the court, to which exception was taken, “that if the jury believe from the evidence that the defendant did not know that by signing the paper read in evidence he was acknowledging the title of the complainant to the land in question, and that he never intended by signing said paper to acknowledge the title of Mr. May, then said paper does not bind him to the extent of such aclcnowledgment while technically incorrect, in that it gave the jury to understand that the defendant was not bound by the legal effect of his agreement, unless he actually knew such legal effect; and, also, in that it suggested to the jury that the title of May was acknowledged by the signing of the paper; yet the charge, if made more accurate, to-wit: if the jury had been instructed that if the evidence had shown that the defendant did not know the terms of the agreement, or had been induced through his ignorance and the sagacity of May’s agents to sign the paper without being informed of its contents, he was not bound by its terms or their legal effect, the. verdict would undoubtedly have been for the defendant.
There having been no legitímate proof that the defendant occupied this land under the lease, or that he had knowingly acknowledged the complainant’s right of possession, the complainant was not entitled to a verdict under any instruction that should have been given. We think the verdict was in accordance with the law and the facts, and' in such case it should not be disturbed, although there may have been an-abstract error in the charge. See McKay vs. Lane, 5 Fla., 268; Proctor vs. Hart, Ib., 465; Doggett vs. Willey, 6 Fla., 482; Prescott vs. Johnson, 8 Fla., 391.
The judgment is affirmed.
The preceding opinion was rendered at the January term, A. D. 1880, and at the same term the appellants filed a petition for a rehearing, which was not disposed of till the present term.
The petition is as follows:
The respectful petition of the appellants shows to the. court the following matters, with their prayer for a rehearing of the cause:
The executors of the estate of Asa May instituted this action in the Circuit Court of Jefferson county, under the statute of 1868, against Stephen Seymour, to recover possession of five acres of land or thereabouts, which they claimed he unlawfully withheld from them.
This land was a part of twenty-five acres rented from their testator in his lifetime, and before his death all of the land had been restored to his actual possession but the -five acres sued for. Seymour refused* to give this part up to the executors of Asa May, who died soon after the close of the year for which Seymour had leased the land from him. It came out incidentally in the testimony that Seymour had been in possession of the land for some years while Alvin May held the plantation of which it formed 'a part; that the plantation was sold under an execution against Alvin May; that Asa May became the purchaser, and then claimed a right to control the portion occupied by Seymour.
After taking possession lie treats with Seymour, and they enter into a written and sealed lease, which was duly executed in the presence of two subscribing witnesses, and Seymour holds peaceful possession of twenty-five acres during the year A. D. 1877, under this lease, which was executed according to all the requirements of the statute in such cases provided.
The plaintiffs felt safe in resting their right to recover upon this lease, and, therefore, did not attempt to meet Seymour’s statements in his testimony as to his title under Alvin May, nor to his statements of conversations with Asa May, which are not evidence under our statute and ought not to influence the court. It was a written instrument, and in law embraced the entire contract of the parties; it included all previous verbal understandings that were to be retained; it could not be contradicted by the surviving contractor; it was under seal, which, of itself, imports a consideration; it was entered into voluntarily, as the testimony fully established; its contents were explained to Seymour. He admits that Edwards told him what it was. It is true that it was not read to him, but he did not ask to have it read. He signed and sealed the lease with his eyes open, and ought not to escape its terms on the plea of ignorance.
Then, too, it is evident from Croom’s testimony that Asa May took possession at the close of the year of all the land embraced in the lease except the few acres here sued for, and that Seymour made no effort to control or retain any more than the few acres around the house after the lease expired.
The petitioners believe that the court has overlooked the charge asked for by them, which was clearly applicable to the circumstances of the caso. The substance of it was:
If Seymour was induced by any fraud or deceit of May to sign the lease, it was not binding upon him; but ignorance alone would not excuse him. Such a charge, the petitioners believe, would have resulted in a verdict for them, for there was no charge of any unfair conduct upon May’s part in the transaction, and his character for fair dealing was so well known that it would have taken strong evidence to satisfy a jury of the vicinage that Asa May had imposed upon an ignorant man. Instead of the charge asked for, the court virtually charged that ignorance alone excused Seymour, and further misled the jury by charging upon the question of title. One of the most serious difficulties in cases of this nature is to keep the jury from confusion upon the subject of the title; and this part of the charge alone was enough to- affect the verdict.
This court finds the charge was erroneous, and if it was, the petitioners respectfully urge that their case ought to go before a jury with a correct charge. The jury are the sole judges of fact.
The plaintiffs did not deem it necessary to meet all the statements of defendant, and inferences from these statements might be drawn prejudicial to the testator’s character by those who obtain all their views of the case from *190 the record without the knowledge oí the parties a jury would have.
It is respectfully suggested that this court may have unconsciously been thus affected, and been influenced by the apparent equities of the case rather than its strict legal points. The plaintiffs relied on these legal points, which have been already referred to. They relied upon the lease, upon the character for integrity enjoyed by the testator in his lifetime, upon the fact that. May did not impose upon Seymour’s ignorance, that the contents of the lease were stated to Seymour, that he entered into it voluntarily, that he occupied tire land in peace after executing it, that May recovered possession of the larger portion of the land after the year closed, and if Seymour did not know the full contents of the lease it was not because it was purposely kept back from him, but because he did not even ask that it be read to him.
It is respectfully suggested, too, that it would hardly be fair to sustain the judgment upon a different theory of the management of the case than was followed.
It was never claimed' in the course of the trial by the court or counsel that the burden of proof was upon plaintiffs, to prove upon Seymour’s part full knowledge of the contract he was entering into when he signed the lease; if it had been plaintiffs would have attempted to strengthen this point witli further evidence. Had the case been managed upon this theory the plaintiffs would have pursued a different course, and the erroneous charge given by the court below and accepted by the defendant’s attorney would seem to be reason enough for sending the case back to a jury, so that plaintiffs may have an opportunity to meet this view.
The executors respectfully pray for a re-hearing of -the case, and an opportunity to argue the points which presented themselves so forcibly to this court, but which the counsel for the defendant did not raise, and which therefore were not answered in their behalf, but they beljeve can be successfully answered, and they will ever pray, &c.