CITY OF CORAL GABLES, FLORIDA, a Municipal Corporation, Respondent, v. STATE OF FLORIDA, *ex rel.* GEORGE COUPER GIBBS, Attorney General, of the State of Florida, and D. C. DRAWDY and EFFIE F. DRAWDY, His Wife, co-relators.

5 So. (2nd) 241
En Banc
Opinion Filed December 2, 1941
Rehearing Denied January 8, 1942

*Edward L. Semple,* for Plaintiff in Error;

*Joseph Weintraub* and *Melbourne L. Martin,* for Defendants in Error.

THOMAS, J.—A writ of quo warranto was issued on the information of the Attorney General seeking the exclusion from the limits of the City of Coral Gables of certain property owned by co-relators.

It was alleged in the information that the boundaries of the city were fixed by an Act of the Legislature of 1925 and an amendatory law passed in 1927. It was charged that the lands in question were located about four miles south of the business center and were rural in character. Complaint was made that they were assessed in excess of their real value for the

purpose of paying off the indebtedness of the municipality and that no improvements had been made on the property by the city except to make potable water obtainable. According to the information no benefits "usually and customarily derived by property owners" were available and none was "probable or contemplated." Because of the remoteness of the land, so it was averred, taxation of it amounted to its taking without just compensation in violation of the constitutional rights of the owners. The information concluded with the statement that certain properties located "within one-quarter of a mile" (to the westward) and other lands directly south of the property in question and across the county road from it had been excluded by the court.

The allegations of the answer of the respondent may, for the purpose of this decision, be classified as those pertaining to the location of the property and its physical characteristics and those relating to the defense of estoppel. They were so treated by the circuit judge in his final judgment as we shall later point out.

The rural character claimed for the property was refuted and the affirmative statement made in the pleading is that it was not only urban, because of its proximity to the commercial area, but that the soil was unfit for agricultural purposes. It was flatly denied that the property was so far removed from the center of the city that it received none of the benefits deriving from location in a municipality. The land was described as being located on a broad and beautiful highway and between a recently widened, newly surfaced and completely rebuilt street and another paved highway, all three improved at the partial expense of

the respondent. Further describing the importance of the intersection of the street on which the co-relators' property was located and one of the thorough-fares hard by it was alleged that the traffic there was of such consequence that it was necessary to maintain "a full sized traffic light, electrically operated." It was further alleged that "sidewalks were built around the property and streets built" with the proceeds from bonds issued for the purpose with the approval of the freeholders, all without objection of the co-relators or their predecessors. The answer, further giving the physical description of the property, alleged that "a few yards north" of it was a canal and yacht basin of suitable depth constructed "at the expense of relators' predecessors in title" who petitioned the Legislature of the State of Florida for the incorporation of the respondent city. It was asserted that the canal was not only easily accessible to the relators' lands but could be crossed without difficulty on bridges maintained by respondent. Further, it was said that a club building to which the respondent had contributed substantial sums was located nearby and afforded a place for social and civic gatherings and housed a library. Following a denial that there has been any failure to furnish electric service, garbage collection or fire and police protection there followed the positive statement that all of such services are available to the lands of the relators.

It was alleged, too, that the growth of the city for several years had been towards the property of the relators. In the answer it was set out that a vast amount of money had been spent for advertisement of the city's attractions and facilities; that a university was being maintained for the education of young men

and women; that further improvement of the yacht basin was planned; that undesirable businesses were forbidden; that the city had increased in population from seven hundred and fifty at the time of its incorporation to eight thousand five hundred; and that the city owned real estate used for a golf course, a world-famous casino and swimming pool, a country club, tennis and shuffle-board courts and for its police and fire departments.

Allegations were further made that co-relators and their predecessors in title had never made objection to the incorporation of the city; that the property which co-relators bought was taken subject to municipal taxes which they assumed; that their predecessors in title agreed to the plats which were recorded dedicating a part of the property now owned by relators as public streets and highways; that the co-relators had never made any protest against easements granted for utility purposes; that they had delayed in asserting their individual rights; that no objection had been made by them or their predecessors to the issuance of bonds, or the refunding of bonds outstanding; that they had made no attack upon the existence of the municipality until the present suit; had paid taxes to the city recognizing the jurisdiction of the city over lands in question; and that by their actions they were estopped to question the jurisdiction and authority of the respondent.

A demurrer was filed to the answer and return, a motion for judgment of ouster notwithstanding the answer and return was made and also one to strike part of the defensive pleading. The circuit judge entered his order sustaining the demurrer and granting the motion to strike and rendered his final judgment

notwithstanding the answer and return, reciting that there was a failure on the part of the respondent to set up any estoppel against the relator and co-relators or to present any issuable facts.

It is apparent to us that the respondent's pleading contained much historical and argumentative matter that should have been eliminated on the motion but we are not convinced that there was a total absence of allegations which, if proven, would justify a discharge of the writ.

It seems agreed that each case in quo warranto for the exclusion of property from city limits must be decided on the facts peculiar to it and it has been decided by this court that the establishment of estoppel by acquiescence must also be determined according to the circumstances of the particular litigation. State v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327.

As we have stated at the outset and as the circuit judge in his order observed, in the present controversy it must be determined whether the property was so distant from the center of the city that the unavailability of benefits warranted exclusion and whether the conduct of the co-relators and their predecessors in title was such that the former were estopped by acquiescence. We will discuss these matters in inverse order.

It is patent from the allegations of the bill of complaint that about sixteen years have elapsed since the original incorporation of the city, during which time the city has developed in a remarkable degree and has increased in population tenfold. Vast sums of money have been expended for improvements of various kinds, not only in the development of those functions which are usually exercised by a municipality, but

also those which are so important to a community calculated to attract and entertain visitors. Thus, taking the allegations of the answer as true for the purpose of passing upon the correctness of the order entering the judgment notwithstanding it, boulevards were laid out and beautified, yacht basins improved, bridges maintained, municipal buildings provided, and golf courses, shuffleboard courts, a library, and a club sustained if not actually built by the city.

Indebtedness has been incurred in the form of bonds issued after approval by freeholders and those bonds have been refunded and during at least one session of the Legislature, subsequent to the original charter Act, that body has recognized the boundaries of the municipality. According to this answer the development has spread southward from its original center toward the property owned by the co-relators and as it has progressed no plaint has been heard from relators or any one in their behalf until the present suit was instituted. It is true that the pleadings contain allegations that some property to the westward and some directly south of that owned by the co-relators has been excluded, but under the ruling of this Court in City of Auburndale v. State, 135 Fla. 172, 184 So. 787, laches, if available in the instant suit will not be defeated simply because of the elimination of those tracts. These circumstances are sufficient in our opinion to present the defence of estoppel by acquiescence (State v. City of Clearwater, 106 Fla. 761, 139 So. 377, State v. City of Eau Gallie, 99 Fla. 579, 126 So. 124) and if proven to substantiate judgment for respondent.

The defendants in error take the position that estoppel cannot be visited against them because of the

ruling of this court in the case of State v. Town of Boca Raton, 129 Fla. 673, 177 So. 293, where it was written that the court knew of no reason "why the owner of such lands should not be permitted to question the validity of their inclusion within the municipality at any time." We think that the decisions which we have already cited recognized that estoppel might be established in cases of this nature even though exclusion of property in appropriate cases is effected upon the theory that organic rights of the owner have been violated.

We do not undertake in this decision to say that any property owner may not present the question in the proper tribunal at any time whether his property, because of its remoteness, should have been included in the city limits and whether embracing it amounted to confiscation, but we think it is inescapable that the time during which one who has such a complaint waits to present it is a circumstance to be considered with others in determining whether or not he has, by his acquiescence, abandoned his objection. We do not have the opinion that the time in which these co-relators waited to question the jurisdiction of the city could alone defeat their redress but we do believe that in all of the circumstances reflected in the pleadings in this case they were, if the respondent's answer should be proven, estopped by their acquiescence from complaining at this late day.

Allegations about the remoteness of the property were contained in the petition and were flatly denied in the return which placed the burden of proving them on the relators. There were incorporated in the answer certain affirmative pertinent statements with reference to the development and improvement of the city

and the availability to the co-relators when needed of all public utilities and other services expected of a municipality and usually furnished or performed by one. Thus, issuable questions of estoppel and physical conditions were raised which necessitated the introduction of testimony.

We, therefore, conclude that the judgment should be and it is—

Reversed.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN and ADAMS, J. J., concur.

BUFORD, J., not participating.