**STATE OF FLORIDA ex rel., J. TOM WATSON, as Attorney General of said State, v. DADE COUNTY ROOFING CO., INC., a Florida Corporation.**

22 So. (2nd) 793                                June Term, 1945
July 20, 1945                                        En Banc

*J. Tom Watson,* Attorney General, for relator.

*M. Earl Baum* and *J. Lewis Hall,* for respondent.

BUFORD, J.:

This cause is before us on petition to clarify our order of March 16th, 1945 denying writ of quo warranto on information filed by the Attorney General of Florida.

This Information alleges that on January 15th 1944 the respondent made and entered into an agreement with Local Union No. 57 of the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, a labor union operating in Dade County, Florida and by said agreement specifically contracted with said labor union as follows:

"Article 1.

"The terms of this agreement are hereby recognized and accepted as binding on both parties hereto and shall apply in the manner and under the conditions specified herein to the application, preparing for application, removing when material is to be used again and supervising the removal when material is to be replaced, of all roofing, damp or waterproofing materials, insulating materials when used in connection with the above named materials and all other work in connection with or incidental thereto included in the jurisdictional claims of the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, and none but journeymen roofers and waterproofers and apprentices who have a membership card or permit and referral card from Local No. 57 shall be employed on said work.

"Article 2.

"Sec. I.—Local No. 57 hereby agrees to furnish at all times to the above named Contractor, duly qualified journeyman roofers, waterproofers or apprentices to meet the necessary requirements in sufficient numbers as may be necessary to properly execute work contracted for by the Contractor in the manner and under conditions specified in this agreement.

"Sec. II.—Whenever after reasonable notice (48 hours) Local No. 57 is unable to furnish a sufficient number of qualified roofers, waterproofers or apprentices to meet the necessary requirements of the contractor, then the contractor may secure from other sources such additional journeyman roofers

or waterproofers as may be necessary, it being understood that these men shall be eligible for and shall comply with the requirements of membership in Local No. 57, and thus become parties to this agreement.

"Article 3.

"No member or permit man of Local No. 57 may work for any other than a bona fide roofing or waterproofing contractor who has signed this agreement and no member of any firm or company of roofing or waterproofing contractors may work as described in Article 1 of this agreement, without a legal permit from Local No. 57. These permits to be limited as to time and work to be done and will only be issued in cases of emergency.

"Article 4.

"No member or permit man of Local No. 57 may do lump, job or piece-work and no Contractor who is a party to this agreement may sub-let or sub-contract any work as described in Article 1 of this agreement, to any other than a bona fide roofing contractor, who uses Union Labor exclusively. . . .

"Article 8.

"Contractors who take work in another Local's territory shall take half their crew from this Local and obtain half of the crew from the Local where the job is located. If there is a difference in the wage scale, the higher scale shall be paid to the members of Local 57. . . .

"Article 10.

" . . . All foremen shall be members of Local No. 57 and shall receive a minimum of ($1.00) one dollar per day above regular rate. . . .

Article 12.

"Apprentices shall serve an apprenticeship of two years, except when deemed competent, he may be promoted to journeyman without regard to time served, with consent of Local No. 57. He may work on composition roofing only and under the direct supervision of a composition journeyman. Not more than two apprentices may work with each journeyman. . . .

"Article 17.

"Should any Contractor who is a party to this agreement subsequently repudiate this agreement or any other agreement of a Local Union affiliated with the Roofers United Association and operate as an unfair shop, Local No. 57 agrees not to consider an application from such Contractor to again become a party to this agreement, without the written approval of two-thirds of the Contractors who are operating under this agreement."

It then alleges that in November, 1944, the following amendment to Section 12 of the Constitution was adopted:

"Section XII. No person shall be subject to be twice put in jeopardy for the same offense, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall private property be taken without just compensation. *The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization;* provided that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer. (underscoring supplied)."

It then alleges that the said agreement is nevertheless being arbitrarily continued in force.

It then alleges:

"That the respondent did not make such contract under any directive of the National War Labor Board and is not engaged in work contributory to the war effort by the national government. That the respondent is engaged solely in installing and repairing rooms in Dade County, Florida, for private individuals and private corporations," and prays,

"Whereupon the said Attorney General of the State of Florida, for and in behalf of the said State and the people thereof, prays the advice of this Court in the premises and that due process of law issue against the said Dade County Roofing Co., Inc., in this behalf, and that the Court will declare that the complained of portions of said agreement are null and void as being in conflict with the Constitution and laws of Florida; and that the Court will oust the respondent

from usurping and exercising its corporate franchises, privileges and rights by doing business under and with the aid of said complained of portion of said agreement, contrary to law."

We are not unmindful of the principle enunciated in State ex rel. Landis et al. v. S. H. Kress & Co., 115 Fla. 189, 155 So. 823, stated as follows:

"In quo warranto by Attorney General to oust foreign corporation from permit to do business in state, court has no discretion but to issue the writ, irrespective of sufficiency in law of the allegations of the information."

This enunciation has theretofore been stated in State ex rel. Attorney General v. Bryan, 50 Fla. 293. 39 So. 929, and was reiterated in State ex rel. Landis, Attorney General, v. Valz, 117 Fla. 311, 157 So. 651.

However, since the rendition of the opinions, we have adopted rules of the Supreme Court calculated to bring to quicker conclusion the determination of matters presented here. Amongst others is Rule 27 which provides:

"Rule 27. EXTRAORDINARY WRITS, Mandamus, Certiorari, Prohibition, Quo Warranto, Habeas Corpus, AND STAY WRITS.

"(1) The provisions of Rule 27 are applicable to Rules 28 to 33, both inclusive.

"(a) When Heard. Notice.—All applications for writs of mandamus, certorari, prohibition, quo warranto, habeas corpus and other writs necessary to the complete exercise of the jurisdiction of this Court as authorized by Section 5, Article 5 of the Constitution shall be made as herein provided and may be heard any Monday at 9:30 A.M., provided five days notice of such application shall have been given to the adverse party and proof thereof filed with the Clerk of this Court.

"(b) Writs Raising Issue of Fact Not Heard.—Application raising questions of facts which will require the taking of testimony to determine will not be entertained.

"(c) Brief Served on Respondent. Copy of every brief required with any application shall be furnished the adverse party.

"(d) If presented in person, not exceeding ten minutes to the side will be allowed for argument. If more time is desired the cause will, on application of either party, be set for a day certain and the full time given." This Rule was adopted for the purpose of simplifying procedure and eliminating much useless pleading in this Court.

So it is that under this Rule we may now proceed to examine an information in quo warranto (after notice and opportunity for being heard by the opposite party) and, on the showing made, determine whether or not a prima facie showing for relief as prayed is made by the information, and thereupon either issue or deny the writ. Such was the course followed in the instant case resulting in the entry of our Order of March 16th, 1945, *supra.*

In proceeding thus we followed our enunciation in State ex rel. Watson, Attorney General, v. Hurlbert, 155 Fla. 531, 20 So. (2nd) 693, wherein we held:

"Where information in quo warranto filed in the name of State on relation of Attorney General sets out with particularity the facts upon which alleged usurpation of office is predicated and such facts show a legal right to the office in respondent, information will be adjudged insufficient and writ denied."

As above stated, the relator sought judgment of this Court declaring that the quoted provisions of the involved contract or agreement executed January 15, 1944 were null and void as being in conflict with the Amendment to the Constitution adopted November 9, 1944. This presents or tenders an issue which this Court is without original jurisdiction to determine as it is in effect an effort to reform a contract which is a matter of chancery jurisdiction where all parties to the contract must be made parties to the suit and to visit on the contract of January 15, 1944, a constitutional provision adopted ten months later.

The information also sought judgment of ouster of the respondent because of the exercise of its corporate franchise, privileges and rights by doing business under and with the aid of said complained of portion of said agreement.

The Constitution, amended Sec. 12 of our Declaration

of Rights, specifically provides "that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."

The pertinent part of the section involved here is as follows:

"The right of persons to work shall not be denied or abridged on account of member-ship or non-membership in any labor union or labor organization."

The information makes no allegation that any person or persons have been denied the right to work on account of membership or non-membership in any labor union or labor organization since the adoption of the amended section. Whether or not such allegation would be sufficient to warrant the relief prayed, we do not now determine.

The allegations of the information are insufficient to show grounds for the granting of the writ and, therefore, same was denied.

THOMAN and ADAMS, JJ., concur.

SEBRING, J.

An information in the nature of quo warranto was filed in this court by the Attorney General on March 12, 1945. The purpose of the information was to obtain an order adjudicating certain portions of a written agreement entered into between the respondent, Dade County Roofing Co. Inc., a Florida Corporation, and a local union of Dade County workmen to be null and void, and thereupon to oust the respondent corporation from exercising its corporate franchises, privileges and rights for continuing to do business under and with the aid of the complained of portions of said written agreement. Upon consideration, this court, by majority vote but without opinion, entered its order denying the issuance of a rule to show cause in said proceedings. The Attorney General, by petition, has requested this court to clarify its order of denial so as to make it clear whether the order is such a final ruling on the merits of the case as will constitute a prior adjudication in any future proceedings concerning the legality of the contract, or whether the order is simply a refusal to entertain jurisdiction of the case, with prejudice to the rights

of the Attorney General to litigate the issues tendered by his information in another form or proceeding. The cause is now before us on the petition for clarification.

The information presented to the court alleges in substance, as follows: On and prior to January 15, 1944, the respondent, Dade County Roofing Co., Inc., was, and now is, a corporation organized and existing under and by virtue of the general corporate laws of the State of Florida, and is now engaged in the roofing business in Dade County, Florida. On or about January 15, 1944, the respondent made and entered into an agreement with Local Union No. 57 of the United Slate, Tile and Compositions, Roofers, Damp and Waterproof Workers Association, a labor union operating in Dade County, Florida, and in and by said agreement specifically contracted with said labor union as follows:

"Article 1

"The terms of this agreement are hereby recognized and accepted as binding on both parties hereto and shall apply in the manner and under the conditions specified herein to the application, preparing for application, removing when material is to be used again and supervising the removal when material is to be replaced, of all roofing, damp or waterproofing, insulating materials when used in connection with the above named materials and all other work in connection with or incidental thereto included in the jurisdiction claims of the United Slate, Title and Composition Roofers, Damp and Waterproof Workers Association, and none but journeymen roofers and waterproofers and apprentices who have a membership card or permit and referral card from Local No. 57 shall be employed on said work.

"Article 2

"Sec. I—Local No. 57 hereby agrees to furnish at all times to the above named Contractor, duly qualified journeymen roofers, waterproofers or apprentices to meet the necessary requirements in sufficient numbers as may be necessary to properly execute work contracted for by the contractor, in the manner and under conditions specified in this agreement.

"Sec. II.—Whenever after reasonable notice (48 hours) Local No. 57 is unable to furnish a sufficient number of quali-

fied roofers, waterproofers or apprentices to meet the necessary requirements of the Contractor, then the Contractor may secure from other sources such additional journeymen roofers or waterproofers as may be necessary, it being understood that these men shall be eligible for and shall comply with the requirements of membership in Local No. 57, and thus become parties to this agreement.

## "Article 3

"No member or permit man of Local No. 57 may work for any other than a bona fide roofing or waterproofing contractor who has signed this agreement and no member of any firm or company of roofing or waterproofing contractors may work as described in Article 1 of this agreement, without a legal permit from Local No. 57. These permits to be limited as to time and work to be done and will only be issued in cases of emergency.

## "Article 4

No member or permit man of Local No. 57 may. do lump, job or piece-work and no contractor who is a party to this agreement may sub-let or sub-contract any work as described in Article 1 of this agreement, to any other than a bona fide roofing contractor who uses Union Labor exclusively. . . .

## "Article 8

"Contractors who take work in another Local's territory shall take half their crew from this Local and obtain half of the crew from the Local where the job is located. If there is a difference in the wage scale, the higher scale shall be paid to the members of Local 57. . . .

## "Article 10

" . . . All foremen shall be members of Local No. 57 and shall receive a minimum of ($1.00) one dollar per day above regular rate."

## "Article 12

"Apprentices shall serve an apprenticeship of two years, except when deemed competent, he may be promoted to journeyman without regard to time served, with consent of Local No. 57. He may work on composition roofing only and

under the direct supervision of a composition journeyman. Not more than two apprentices may work with each journeyman. . . .

"Article 17

"Should any Contractor who is a party to this agreement subsequently repudiate this agreement or any other agreement of a Local Union affiliated with the Roofers United Association and operate as an unfair shop, Local No. 57 agrees not to consider an application from such Contractor to again become a party to this agreement without the written approval of two-thirds of the Contractors who are operating under this agreement."

The information alleges further that at the general election had in November 1944 the electorate of Florida amended section 12 of the Declaration of Rights of the Constitution of Florida by adding thereto the words:

"The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."

It is averred in the information that "respondent did not make such contract under any directive of the National War Labor Board and is not engaged in work contributory to the war effort by the national government." The information charges that "by virtue of the adoption of said constitutional amendment the above quoted portions of said [written] agreement deny and abridge the right to work and of collective bargaining by employees with their employers, and are illegal, without force or effect, in violation of the laws and constitution of the State of Florida, and outside of any warrant, charter or grant to the respondent. That said agreement is, nevertheless, being arbitrarily continued in force." The prayer of the information is "that due process of law issue against the said Dade County Roofing Co., Inc., in this behalf, and that the Court will declare that the complained of portions of said agreement are null and void as being in conflict with the Constitution and laws of Florida; and that the

Court will oust the respondent from usurping and exercising its corporate franchises, privileges and rights by doing business under and with the aid of said complained of portions of said agreement, contrary to law."

The Rules of Practice of the Supreme Court of Florida, promulgated under authority of chapter 13870, Acts of 1929; F.S.A. Sec. 25.03, Florida Statutes, 1941, and effective as of April 1, 1942, provide:

"Rule 27. EXTRAORDINARY WRITS, Mandamus, Certiorari, Prohibition Quo Warranto, Habeas Corpus, AND STAY WRITS.

"(1) The provisions of Rule 27 are applicable to Rules 28 to 33, both inclusive.

"(a) When Heard. Notice. All applications for writs of mandamus, certiorari, prohibition, quo warranto, habeas corpus, and other writs necessary to the complete exercise of the jurisdiction of this Court as authorized by Section 5, Article 5, of the Constitution shall be made as herein provided and may be heard any Monday at 9:30 A.M., provided five days' notice of such application shall have been given to the adverse party and proof thereof filed with the Clerk of this Court.

"(b) Writs Raising Issue of Fact Not Heard. Application raising questions of fact which will require the taking of testimony to determine will not be entertained.

"(c) Brief Served on Respondent. Copy of every brief required with any application shall be furnished the adverse party.

"(d) If presented in person, not exceeding ten minutes to the side will be allowed for argument. If more time is desired the cause will, on application of either party, be set for a day certain and full time given."

Rules 28 to 33, which are referred to in rule 27, are rules governing the issuance by this court of writs of certiorari, prohibition, mandamus, quo warranto, habeas corpus and constitutional stay writs. Such writs, generally speaking, are not writs of right but are discretionary writs which the courts, on consideration of public policy, interest, or con-

venience, may decline to issue. State ex rel. Davis, Atty. Genl. v. City of Eau Gallie, 99 Fla. 579, 126 So. 124; City of Winter Haven, v. State ex rel. Landis, Atty. Genl., 125 Fla. 392, 170 So. 100. Upon such considerations, this Court, under Rule 27, 1b, may decline to entertain applications for such writs where it reasonably appears from the face of the initial pleadings that issues of fact are involved which will necessitate a trial by jury.

The reason for incorporating such provisions in the rules is plain. As is pointed out by Mr. Justice Terrell in State ex rel. Watkins, v. Fernendez, 106 Fla. 779, 143 So. 638, 641: "This court has never impaneled a jury, and has no facilities for taking testimony. It was never intended that it perform the function of a nisi prius court; this being peculiarly within the province of the circuit court. If we take original jurisdiction in this contest, other matters of similar character will press us for attention to such an extent that the appellate work will be very much delayed. This is primarily a court of appeals, and while it has concurrent jurisdiction with the circuit courts to issue writs of quo warranto, it has consistently declined to do so. except in cases where the public interest demanded, *and then on an agreed statement of facts.* Either party has the right to appeal if aggrieved at the judgment when rendered by the circuit court." (Italics supplied).

The principle enunciated in the Fernandez case was asserted by this court as early as the year 1909. In State ex rel. Ellis, Atty. General v. Tampa Water Works Co., 57 Fla. 533, 48 So. 639, this court, recognizing that in quo warranto proceedings the litigants have the constitutional right to trial by jury on disputed questions of fact, dismissed a quo warranto proceeding begun in this court, where disputed issues of fact arose, without prejudice to the right to institute such proceeding in the circuit court. In State ex rel. Landis v. Gamble, 112 Fla. 2, 150 So. 130, an original quo warranto proceeding wherein issues of fact were presented by pleas filed by respondent, a similar action was taken; the court pointing out that while it had original jurisdiction to hear the case under the Florida Constitution, the appropriate order to be entered where the pleadings presented issues triable by

jury was to dismiss the cause without prejudice, because under the Declaration of Rights the parties were entitled to a jury trial on the issues. So, in State ex rel. Davis, Atty. Gen. v. City of Avon Park, 117 Fla. 565, 158 So. 159, this court, though asserting that it had power to proceed to hear such disputed issues of fact if it thought such action necessary or advisable for good and sufficient reasons affecting the general state welfare, declared that it was clearly within the power and discretion of the court to dismiss the original proceedings in this court and leave the parties to pursue their remedy by a new proceeding of like nature in the circuit court. To like effect is City of Coral Gables v. State ex rel. Gibbs, Atty. Gen., 148 Fla. 671, 5 So. (2nd) 241; City of Ormond, v. State ex rel. Watson, Atty. Gen. 152 Fla. 419, 12 So. (2nd) 114.

From an examination of the information filed by the Attorney General it is manifestly clear that the whole case rests upon the asserted invalidity of an alleged written contract made between respondent and a stranger to the suit at a time when such contract was apparently valid, but which contract, in the opinion of the attorney general, has now become unlawful and void by virtue of a subsequent constitutional amendment. The contract being the gist of the controversy, questions of fact are likely to arise concerning the terms of the contract, the circumstances of its execution, the manner in which it has been adhered to by interested parties, and other relevant matter within the scope of the pleadings. Any or all of these matters of fact may become important in the ultimate decision to be rendered, for the underlying questions of law involved will doubtless depend upon the facts admitted or proven. If material facts are controverted—as in all likelihood they will be if all parties to the contract are given an opportunity to be heard—such issues can best be settled by a jury drawn for such purpose; and a trial court is the only form in which such jury can be impaneled.

These facts, together with the fact that "other cases in quo warranto are now pending in circuit courts in Florida which involve some of the legal questions involved in the merits of this case"—as we are advised by the attorney general—has impelled us to the conclusion that, in the inter-

ests of orderly and expeditious procedure with fair play accorded all interested parties, the court, in the exercise of a wise discretion, should refuse to entertain the application for quo warranto filed by the attorney general, but without prejudice to his rights to prosecute the cause in a circuit court having concurrent original jurisdiction. By adopting this course of procedure, this court thus preserves to all interested persons the right to present to the circuit court such questions of fact as may well arise, with the full opportunity secured to any aggrieved party to obtain an appellate review of such adverse ruling or order as may be entered by the trial court and brought here on appeal.

For the reasons stated the court refused to entertain the application for quo warranto.

CHAPMAN, C. J., dissenting:

It is my view that the usual notice to appear and show cause should issue by this Court on the information of the Attorney General of Florida to the respondent, Dade County Roofing Co., Inc., which is shown by appropriate allegations of the information to be a corporation established and existing under the Laws of Florida. It is shown that the respondent, on January 15, 1944, entered into a labor union contract with Local Union No. 57 of the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, then operating in Dade County, Florida; that this contract under which the respondent operates is now void and rendered so because it contravenes Section 12 of the Declaration of Rights of the Constitution of Florida adopted by the people of Florida at the General Election of 1944.

The information of the Attorney General describes in detail the unlawful features or portions of the contract existing between the respondent and aforesaid labor union which he asserts contravene the labor amendment of the Florida Constitution adopted in the 1944 General Election. The unlawful features are identified, fully set out and referred to in the information as Articles I, II, III, IV, VIII, X, XII, and XVII.

The Attorney General has not requested here the issuance of process against the labor union *supra,* but the information by reasonable inference extends to it an invitation to intervene as a party in the cause and file an appropriate pleading, and in so doing conforms to the rules of this Court, and the applicable law. A similar proceeding occurred in The International Association of Machinists v. State ex rel. Watson, Atty. Gen., 153 Fla. 672, 15 So. (2nd) 485.

Whether or not the designated portions of the contract set out in the information of the Attorney General are in harmony with or contravene Florida's recently adopted labor amendment is the crux of this controversy. Where the parties have reduced their agreements to writing, the construction or interpretation thereof is usually for the courts. City of Leesburg v. Hall, 96 Fla. 186, 117 So. 840; City of Orlando v. Murphy, 84 Fed. (2nd) 531. Rules of construction applied by the courts are, in part, viz: (1) contracts must be given a reasonable construction. Holmes v. Kilgoce, 89 Fla. 194, 103 So. 825; (2) the intention of the parties must prevail. Ross v. Savage, 66 Fla. 106, 63 So. 148; (3) there must be a meeting of the minds of the parties to the contract. Webster Lbr. Co. v. Lincoln, 94 Fla. 1097, 115 So. 498; (4) the parties to the contract must be competent. Nay v. Seymour, 17 Fla. 725; (5) the contract must have a consideration. Frissell v. Nichols, 94 Fla. 403, 114 So. 431; (6) Courts consider contracts in their entirety. Newcomb v. Belton, 80 Fla. 570, 86 So. 501.

The courts, under our adjudicated cases, have the power to construe or interpret contracts only when the issues are properly presented under appropriate pleadings in a cause. Such procedure contemplates process and service, appearance in court in person or by counsel, filing of appropriate pleadings and a hearing as to their legal sufficiency, etc., argument of counsel and citation of authorities and investigation by the Court of the applicable authorities. If the respondent or labor union desired in their respective answers by way of defense to challenge the constitutionality of our labor amendment, then these issues must be developed in an orderly and approved procedural manner. These rights under our judicial

system are vouchsafed to every litigant. "All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life, liberty, acquiring, possessing and protecting property and pursuing happiness and obtaining safety." Section I, Declaration of Rights of the Florida Constitution.

Section 4 of the Declaration of Rights provides that: all courts in this State shall be open, so that every person for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice shall be administered without sale, denial or delay. These ringing words found in our fundamental law cannot easily be brushed aside or held meaningless. It is the duty of the courts to sustain them; to give them full force and effect; and so interpret them as to effectuate the purposes and objectives as contemplated by the framers of our Constitution.

The principle of law enunciated by this Court in the case of State ex rel. Landis v. S. H. Kress & Co., 115 Fla. 189, 155 So. 823, is applicable to the case at bar. The information in the nature of quo warranto alleged that S. H. Kress & Company was a Texas corporation with its principal place of business in the City of New York; in September, 1927, it obtained a permit to do business in the State of Florida. The information alleged that the respondent, S. H. Kress Company is engaged in a combination of capital, skill and acts for the purpose of creating and carrying out restrictions in the full and free pursuit of business authorized and permitted by the laws of Florida and that it created and carried out restrictions of business pursuits in the State of Florida.

The information concludes with two propositions of law. First, that the respondent is exercising its permit to do business in Florida in violation of the anti-trust laws of Florida. Second, that the Act of the Legislature under which the respondent obtained a permit as a corporation to do business in the State of Florida is unconstitutional and void in its application to the respondent because it operates to permit "intercorporate relations" detrimental to the general welfare and in contravention to the preambles of the Constitution of Florida. Both a demurrer and motion to quash the infor-

mation were interposed and by this Court overruled and denied.

We in part said (text 115 Fla. 198-201) :

"If the action taken by the Attorney General is construed to be an attack upon the constitutionality of the foreign-corporations-permit statutes we hold that it is within his power as the judicial officer of the Executive Department to do so. . . .

"The attack by the Attorney General upon the constitutionality of the Act is within the powers of that office, and was so recognized in State ex rel. Ellis, Attorney General, v. Bryan, et al., *supra* (50 Fla. 293, 39 So. 929). . . .

"The office of Attorney General has existed both in this country and England for a great while. The office is vested by the common law with a great variety of duties in the administration of the government. It has been asserted that the duties of such an office are so numerous and varied that it has not been the policy of the Legislature of the States to specifically enumerate them; that a grant to the office of some powers by statute does not deprive the Attorney General of those belonging to the office under the common law. The Attorney General has the power and it is his duty among the many devolving upon him by the common law to prosecute all actions necessary for the protection and defense of the property and revenues of the State; to represent the State in all criminal cases before the appellante court; by proper proceedings to revoke and annul grants made by the State improperly or when forfeited by the grantee; by writ of quo warranto to determine the right of any one who claims or usurps any office, and to vacate the charter or annul the existence of a corporation for violations of its charter or for omitting to exercise its corporate powers; to enforce trusts and prevent public nuisances and abuse of trust powers. As the chief law officer of the State, it is his duty, in the absence of express legislative restrictions to the contrary, to exercise all such power and authority as public interests may require from time to time. See State, ex rel. Young v. Robinson, 101 Minn. 277, 112 N. W. Rep. 269, 20 L.R.A. (NS) 1127; 6 C.J. 809; State ex rel. Young v. Village of Kent, 95 Minn. 255,

104 N. W. Rep. 984, 1 L.R.A. (NS) 826. The information in this case was filed by the Attorney General by virtue of the inherent authority of his office. No leave of this Court to file the information was required. The mention of co-relators was surplusage and does not affect the validity of the information. The facts existing in his opinion which call for a quo warranto information, the power and authority exists in him to present it without leave asked of any one. In that respect he represents the sovereignty whose attorney he is. See Vanatta v. Delaware & Bound Brook R. R. Co., 38 N. J. L. 282, text 286; State v. Gleason, 12 Fla. 190.

"Having that power and discharging that duty he may take all subsequent and necessary steps to have the case thus instituted passed upon and determined. The information having been filed and the writ issued as of course to the respondent to show cause why it should not be ousted of its privilege to do business in Florida as a foreign corporation by reason of its alleged violation of the provisions of the anti-trust statute of this State and the preamble of 'the Constitution of the State, there is nothing for this Court to do but to determine the issues of law and fact upon the merits as in ordinary proceedings. See State ex rel. Heatherly v. Shank, 36 W. Va. 223, text 230, 14 S. E. Rep. 1001; People ex rel. Swigert v. The Golden Rule, 114 Ill. 34, text 45, 28 N. E. Rep. 383; High on Extra Legal Remedies, Sec. 606."

The case of State ex rel. Ellis, Atty. Gen. v. Bryan, 50 Fla. 293, 39 So. 929, is directly in point. It was a case of original jurisdiction. The Attorney General filed in this Court information in the nature of quo warranto. It was alleged that Chapter 5384, Laws of Florida, Acts of 1905, was void and unconstitutional for numerous reasons appearing in the information and amendments thereto. This Court, on the information of the Attorney General, issued to the respondents a rule to show cause.

The respondents filed a demurrer to the information and the grounds thereof were to the effect (1) that the information in the nature of a quo warranto can be instituted only by the Attorney General; (2) the information was filed on the relation of others than the Attorney General; (3) the infor-

278

mation can be filed only by the Attorney General, upon his own initiative and without co-operation with others.

Mr. Justice SHACKLEFORD, speaking for the Court forty years ago, put at rest all questions about the power of the Attorney General's office to test the constitutionality of an Act by quo warranto proceedings and said (text 50 Fla. 350-351) :

"The office of Attorney General is, in many respects, judicial in its character, and he is clothed with a considerable discretion. The appropriate and proper function of courts is to hear causes that the citizens of the State may see proper to institute, and there are but few cases in which they can exercise a discretion to refuse to hear them. The Attorney General being intimately associated with the other departments of the Government, being as well the proper legal adviser of the Executive as the Legislative department of the Government, it is highly proper, whenever the right to a public office is to be tried, that he should be clothed with a discretion in the premises which should be exercised at least independently of the courts in actions of this character. A careful review of the cases in the books will show that the records disclose that in almost every case of this kind there is more or less political feeling, and the case at bar discloses no less, and indeed much more, of this than is usual. Is it to be said that it is a function appropriate to a court to weigh the motives of contending political factions, examine into their various political theories, attempt to enter into their breasts, and determine motives? Are they to measure with microscopic analysis, and ascertain whether there is passion and prejudice, and after ascertaining that there is, to fix by judicial determination just how much of each, or either, or both, is necessary to remove a case from judicial scrutiny? The court cannot criticize the motives of a party acting as an officer; it may, in some cases, exercise a discretion where a relator clothed with no official discretion asks its aid. In him are vested no public rights, no governmental discretion, and he seeks a judicial tribunal as an individual, and should not be permitted to inquire into rights to franchise unless the public good is promoted thereby.

"This discretion is vested in the Attorney General; if he exercises it improperly, there is another tribunal, the people, or their grand inquest, the Assembly, to punish him." Also see Robinson v. Jones, 14 Fla. 256, State v. Jones, 16 Fla. 306; Lake v. Palmer, 18 Fla. 501, text 506, *et seq.;* State v. Anderson, 26 Fla. 240, text 251, *et seq.;* especially 253, 8 So. Rep. 1; Buckman v. State, 34 Fla. 48, text 56, et seq., 15 So. Rep. 697, S.C. 24 L.R.A. 806."

On November 19, 1868, Almon R. Meek, Attorney General of Florida, filed in the Supreme Court of Florida an information in the nature of a quo warranto against W. H. Gleason, exercising the functions of Lieutenant Governor of Florida (12 Fla. 190). The Gleason case and State ex rel. Ellis, Atty. Gen. V. Bryan, *supra,* each involved offices of the title to offices. The case at bar seeks to cancel Letters Patent issued by the State of Florida to the Dade County Roofing Co., Inc. upon the theory that its contract with the labor union is *ultra vires* and contravenes our recently adopted labor amendment.

Honorable W. H. Ellis was Attorney General and signed the information in the nature of a quo warranto presented here in State ex rel. Ellis, Atty. Gen. v. Bryan, *supra.* Justice W. H. Ellis prepared the opinion for this Court in State ex rel. Landis v. S. H. Kress & Co., *supra.* It will be observed that our Florida cases granting the Attorney General power and authority to maintain quo warranto informations were cited with approval by Mr. Justice ELLIS in the Kress case. The Court in the Kress case simply extended informations in the nature of quo warranto to include unconstitutional activities of corporations doing business in Florida, and this is the contention of Attorney General Watson in the case at bar.

Mr. Justice WESTCOTT, in the Gleason case, *supra,* in part, said (text 12 Fla. 224-5):

"An information in the nature of a quo warranto may be filed at the discretion of the Attorney General in a case of this character. The proper process 'issues on demand of the proper officer of the State, as a matter of course, and there is no more necessity for an application to this court for this writ than there would be for a summons in a circuit court when

the State is about to commence an action of debt against one of her debtors. No reasons are offered why the writ should issue, no information is communicated by affidavit or otherwise, and there is no power in this court to refuse issuing the writ. Why ask leave? It is the admission that this court has a discretion, whereas none is conceived to exist.' 8th Missouri, 331."

The point is made that if this Court should issue process on the information of the Attorney General in the case at bar we would violate Rules 27 to 32, inclusive, promulgated and adopted by this Court, and further, because questions of fact may develop necessitating a trial by jury. The answer to these contentions is threefold: (1) the Rules *supra* do not apply to a State Agency; (2) emergency cases are not controlled by these Rules; (3) cases coupled with a public interest are generally excepted from the Rules. The information in the case at bar falls within one of these exceptions.

The writer looks to constitutional mandates in the case at bar for directions rather than to Chapter 13870, Acts of 1929, under which our Rules *supra* were promulgated. Section 5 Article V of the Florida Constitution confers on the Supreme Court of Florida the power to issue writs of mandamus, certiorari, quo warranto, habeas corpus and all other writs necessary or proper to the complete exercise of its jurisdiction. Section 22 of Article IV of our Constitution provides that the Attorney General shall be the legal adviser of the Governor, and of each of the officers of the Executive Department, and shall perform such other duties as may be prescribed by law. He shall be the reporter for the Supreme Court. Additional duties have been prescribed by statute. It is his official duty to enforce our recently adopted labor amendment here involved.

Com. ex rel. Woodruff v. American Baseball Club, 290 Pa. 136, 138 Atl. 497, 53 A.L.R. 1027, involved letters patent issued by the state of Pennsylvania to the American Baseball Club. It held a franchise as a member of the American League of Baseball Clubs. It owned a baseball park located in the City of Philadelphia and hired paid baseball players.

It charged the public an admission fee to enter the park to see the ball games. In the Summer of 1926 it announced the playing of games (and did play) in the park on Sunday. The playing of the games on Sunday was in violation of a statute of the State.

In an information in quo warranto filed by the Attorney General it was alleged that the Baseball Club under its corporate franchise granted it by the State of Pennsylvania could be ousted therefrom because of its use contrary to the laws of the State. The Court sustained the Attorney General's contention and held that where one of the State's creature, a corporation, violates the laws of the State of its creation, then the franchise privileges granted it could be revoked because the letters patent were issued to the corporation for legal business and when it is shown that its activities are contrary to law, then it could be ousted and quo warranto was the appropriate remedy. See United States v. Union Pacific R. Co., 98 U. S. 569, 25 L. Ed. 143, 22 R.C.L. 671-75; Annotations pages 1038 to 1041 of Volume 53 A.L.R.; 5 Am. Jur. 249-50 par. 19. Our holding in the S. H. Kress Co. case *supra* is sustained by the weight of authority.

It is my view and I therefore conclude that process should issue on the information of the Attorney General now before us because the material allegations thereof are sustained by our State Constitution, applicable statutes and adjudicated cases. I favor issuing process.

TERRELL and BROWN, JJ., concur.