STATE, *ex rel.* CARY D. LANDIS, Att'y Gen'l, v. FRED M. VALZ, *et al.,* as City Commission of Jacksonville, *et al.*

157 So. 651.

En Banc.

Opinion Filed November 26, 1934.

*John E. Mathews,* for Relator;

*Austin Miller, Lester W. Jennings, Carl T. Hoffman* and *Harry B. Fozzard,* for Respondents.

ELLIS, J.—The Jacksonville Kennel Club Inc., obtained a permit under the provisions of Chapter 14832, Laws of Florida, 1931, to conduct and operate a race track at a certain location in the City of Jacksonville. The permit became effectual to authorize racing by ratification by a majority of the voters participating in an election in the county held under the provisions of the Act.

The Kennel Club intends to operate a dog racing plant upon the property, the location of which in the City of Jacksonville and the kind of racing intended to be conducted was set forth in the permit granted by the State Racing Commission established by the Act. By reason of that permit and its ratification by a majority of the voters participating in the election the Kennel Club, Inc., asserts that it has the power, right, privilege and franchise to construct, maintain and operate a dog racing plant upon

the land, the location of which was set forth in the permit which was voted upon separately as the Act requires.

The City of Jacksonville, Florida, had previously to the granting of the permit to the Kennel Club adopted a zoning ordinance pursuant to a comprehensive plan for the zoning of the city. The ordinance was numbered U-125 and was adopted in September, 1930, and published during that month. It was entitled.

"An Ordinance Adopting a Comprehensive Plan for the Zoning of the City of Jacksonville, for the Purpose of Regulating the Location of Trades, Industries, Apartment Houses, Dwellings and Other Structures and Other Uses of Property; Providing Rules, Regulations and Requirements Relative to the Erection of Buildings and Uses of Property in Each of Said Zones; Providing for the Administering and Enforcing of the Same, and Providing Penalties for the Violation of the Several Provisions Hereof."

The ordinance was adopted pursuant to Chapter 9783, Acts of 1923, Laws of Florida. This Act was supplemental to and amendatory of Chapter 7659, Acts of 1917, which was an Act affecting the government of the City of Jacksonville. Chapter 9783, *supra,* provided in Sections 13 and 14 for the adoption of a zoning ordinance by the city, in the interest of "public health, safety, order, convenience, comfort, prosperity or general welfare," for districting or zoning the city for the purpose of regulating the location of "trades, industries, apartment houses, dwellings or other uses of property, or for the purpose of regulating the height of buildings or other structures, or the area of dimensions of lots or yards in connection with buildings or other structures, or for the purpose of regulating the alignments of buildings or other structures near street frontages."

Section 14 of the Act requires that no zoning ordinances shall be adopted until a comprehensive plan for the zoning

of the city had been prepared and submitted to the Mayor and City Council by the City Commission; that public hearings should be held, of which notice should be given by publishing the same in a newspaper of general circulation once each week for not less than four consecutive weeks. The section prohibited the adoption of an ordinance, measure or regulation which violates, differs or departs from the plan or report submitted by the City Commissioners unless concurred in by the City Commission.

The lot of land described in the permit granted to the Kennel Club lies in "Residence 'B' District," as the same is indicated on the Building Zone Plan. Section 5 of the ordinance provides that "no building or premises shall be used and no building or structure shall be erected which is intended or designed to be used, in whole or in part, for any industry, trade, manufacture or commercial purpose or for other than one or more of the following specified purposes." Then follow nine specifications of the use to which a lot within that District may be put. The first specification is as follows: "Any use specified above in Section 4(a) and permitted in Residence 'A' Districts" Subparagraphs 1 to 12 inclusive of paragraph (a) of Section 4 specify the use to which a lot may be put in District "A."

Those subparagraphs specify family dwellings, offices of physicians, surgeon, dentist, musician, lawyer, architect, teacher or other professional person residing on the premises, provided there is no display from the street nor advertising except a small professional name plate; municipal recreation buildings, municipal playgrounds and municipal parks, public libraries, public museums, churches and other places of worship, real estate signs, farms and truck-gardens, nurseries and greenhouses, cemeteries adjacent to or in extension of existing cemeteries, accessory buildings, includ-

ing private garages or stables. There are other regulations not necessary to be named.

Section 17 of the ordinance provides that:

"Where it appears there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this Ordinance, the City Commission shall have power in a specific case, after due notice and public hearing, to determine and vary any such provisions in harmony with the general purpose and intent of the Ordinance so that the public health, safety and general welfare may be secured and substantial justice done, and may permit:

"(1) The extension of an existing non-conforming building or the erection of a supplementary building on the same lot, even into a more restricted district all under such conditions as will safeguard the character of the district and of the more restricted district.

"(2) The authorization of a change of a non-conforming use to one no more harmful or objectionable in its opinion."

The remaining part of subparagraph (2) provides the method of obtaining a public hearing to accomplish the purpose specified in paragraphs No. 1 and No. 2 of the Section. Now the Jacksonville Kennel Club, in October, 1934, applied to Fowler, Building Commissioner or Inspector, for a permit to erect or construct a racing plant on the property described in the permit, which had been obtained and which lies in the Restricted District "B" of the ordinance. Fowler refused to issue the permit unless and until Section 17 of the ordinance U-125 shall be fully complied with. So Fowler proceeded in an attempt to comply with the requirements of the ordinance and a notice of the application of the Kennel Club, Inc., was published.

On October 30, 1934, the Attorney General of the State caused to be filed in this Court an information in the nature

of a quo warranto in which among other things, it was alleged that Fred Valz, T. C. Imeson, St. Elmo W. Acotsa, Ernest Anders, and P. M. Ulsch, as constituting the City Commission of the City, are attempting to comply with Section 17 of the ordinance and will in due course usurp the authority and power to issue a permit to the Kennel Club for the construction of a racing plant upon the property mentioned. It was alleged that Fowler, as Building Commissioner, and the men above named constituting the City Commission, claim to have the power to grant a permit for the construction of a racing plant upon the property, named under the provisions of Section 17 of the ordinance and that they were then usurping such power.

It is claimed by the Attorney General that the attempted exercise by the respondents of such power is in violation of Sections 13 and 14 of the ordinance; that the effect of such a permit would be a rezoning of the area in question without the necessary formalities prescribed by Chapter 9783, *supra*. It is also averred that Section 17 of the ordinance is in violation of the Charter of the City as it in substance provides for a rezoning of the city by certain officials without the formalities required by the legislative Act, but if the section is valid it is not applicable to the case under consideration because the Kennel Club, Inc., does not propose to construct an extension of an existing nonconforming building or the erection of a supplementary building on the same lot.

Based upon that information, the Attorney General requests that the persons named as defendants answer to the State by what warrant or authority they claimed to exercise the power named. There was a demurrer to the information and a motion to quash it. They present the questions:

First, whether the statute supersedes the ordinance and

authorizes the holder of a permit duly approved by a vote
of the electors under the provisions of the statute to main-
tain a racing plant upon the land described notwithstanding
the ordinance; second, if the ordinance is not superseded
by the statute, is Section 17 of the ordinance valid, and,
third, if so, does it authorize and empower the City Com-
mission in a specific case, after due notice and public hear-
ing, to permit the erection and maintenance of a racing
plant upon the lot which lies within Residence District "B"
as defined by the ordinance, and fourth, is quo warranto
the appropriate remedy to test the authority of the City
Commissioners upon the allegation that they intend to ex-
ercise a power not conferred upon them by law?

The information was lodged in this Court by the Attor-
ney General acting by virtue of the inherent authority of his
office. No leave of the Court was required to file the in-
formation. In this respect he represents the sovereignty
whose attorney he is.

The facts existing which in his opinion require a quo
warranto information, the power to cause it to be filed exists
in him without leave asked of any one. See State *ex rel.*
Landis v. S. H. Kress & Co. ,115 Fla. 189, 155 South. Rep.
823. In that case it was held that it is for the Attorney
General in such cases to determine whether the public good
requires him to proceed, and that the court upon such a
demand must proceed to hear and determine the cause on
its merits and the questions of law arising upon them.

Questions of law and fact usually arise in such cases on
the answer but where in the information the Attorney Gen-
eral sets out in detail as in this case all the conditions ex-
isting which he alleges require the exercise of the power
in the interest of the public good and those conditions are
admitted by a demurrer to the information or a motion
to quash it, the court may proceed to determine the law as

affecting the rights and powers of the persons proceeded against.

The information alleges that the Building Inspector and the City Commission are attempting to exercise the power to issue a permit for the construction of a racing plant upon the land described and that such power is claimed by them to exist under the provisions of Section 17 of the ordinance. The manner and means by which the power may be exercised are prescribed by the ordinance which is made a part of the information. The allegations of the information therefore upon this point are sufficiently certain to show that the respondents are actually exercising a power granted by the ordinance but which the Attorney General asserts is not valid.

This is not a proceeding against the city for an attempted *ultra vires* act against public policy nor for the abuse of an existing franchise by the performance of acts in excess of the corporate authority. The city is not a party to the proceeding at all, nor is it a proceeding against the persons named as respondents to test their title to offices which they hold. Indeed it is admitted that the respondents rightfully occupy and hold the offices which they in the information are alleged to occupy under the law.

The proceeding is an attempt to prevent the respondents from performing an act which has to do with the internal affairs of the municipal corporation and which the respondents assert it is their duty by virtue of their offices in the exercise of the powers thereof to do and perform. That duty, as the respondents claim, so far as any allegation to the contrary exists, is to hear the application of the Kennel Club for a permit to construct a racing plant on the lot described, after a petition has been signed by certain property owners, who own lands within certain distances of the lot on which the racing plant is to be constructed and publica-

tion of a notice to the public of the application for the permit and to present protests, if any, against the granting of it, and the transmission to the City Commission by the Building Inspector of the application, petition and protests. Thereupon the respondent, City Commission, as the ordinance requires, will call a public hearing after due notice on the matter and if there are no protests the City Commission may, if it deems it advisable, authorize the Building Commissioner to issue a permit in accordance with the application.

Mere function of office as distinguished from the office itself may not be the subject of quo warranto. State v. Hunt, 84 Ohio St. 143 95 N. E. Rep. 666.

A quo warranto proceeding against an officer is not a proper remedy to test the legality of his part or future conduct or acts, and to compel, restrain or obtain a review of such conduct or acts where they do not *ipso facto* operate as or constitute grounds for forfeiture of the office and neither title to the office nor the right to a franchise is involved. State v. Evans, 3 Ark. 585, 36 Am. Dec. 468; City of N. Birmingham v. State, 166 Ala. 122, 52 South. Rep. 202, 139 Am. St. Rep. 17, 21 Ann. Cas. 1123; McDonough v. Bacon, 143 Ga. 283, 84 S. E. Rep. 588; People v. Taylor, 281 Ill. 355, 117 N. E. Rep. 1047; Atty. Gen. v. Lyons, 220 Mass. 536, 108 N. E. Rep. 356; 6 McQuillin Munic. Corp. (2nd E.) Sec. 2693.

The allegation of the information is that respondents are proceeding to comply with Section 17 of the ordinance and will in due course usurp the authority to issue a permit. If the respondents comply with the requirements of Section 17 of the ordinance they may grant a permit only in the event that no protests are filed. The respondents are not asserting a power which is not vested in them by the ordinance. The power which they intend to exert, that is to

hear the application for a permit and grant it or deny it if after publication of notice and a public meeting there are no protests against granting it, is discretionary and incident to the offices of City Commissioner.

Section 17 is a valid provision of the ordinance. It does not, as claimed, invalidate the ordinance by vesting in certain officers the power of legislation to rezone the city. The provision is necessary to give flexibility to the zoning ordinance and prevent it from being arbitrary to the point of unreasonableness. See State, *ex rel.* Taylor v. Jacksonville, 101 Fla. 1241, 133 South. Rep. 114.

The section merely vests the Commission with power in certain circumstances and under certain conditions to apply the policy defined by the ordinance to changing factual conditions. Hampton v. United States, 276 U. S. 394, 48 Sup. Ct. Rep. 348, 72 L. Ed. 624.

The duty imposed upon the Commissioners involves a non-justiciable subject matter. It is not a judicial nor legislative process. They deal with a matter within the purview of the ordinance, within the general and intent of it to the end that substantial justice may be done not inconsistent with the public safety, health and general welfare. It is a discretionary power usually vested in zoning commissions to interpret and apply the provisions of the ordinance in harmony with its general purpose. See 3 McQuillin on Municipal Corp. (2 Ed.) Sec. 1032.

The doctrine that comprehensive zoning is within the constitutional scope of the police power is now well established. See Miller v. Board of Public Works, 195 Cal. 477, 234 Pac. Rep. 381, 38 A. L. R. 1479; West v. City of Wichita, 118 Kan. 265, 234 Pac. Rep. 978; Welch v. Swasey, 193 Mass. 364, 23 L. R. A. (N. S.) 1160, 118 Am. St. Rep. 523, 79 N. E. Rep. 745; Inspector of Buildings v. Stoklosa,

250 Mass. 52, 145 N. E. Rep. 262; People, *ex rel.* Rosevale
Realty Co. v. Kleinert (237 N. Y. 580), 143 N. E. Rep.
750; Pritz v. Messer, 112 Ohio St. 628, 149 N. E. Rep. 30;
Kroner v. City of Portland, 116 Or. 141, 240 Pac. Rep.
536; Reinman v. City of Little Rock, 237 U. S. 171, 35
Sup. Ct. Rep. 511, 59 L. Ed. 900.

Mr. Justice SUTHERLAND, speaking for the Supreme
Court of the United States in Euclid v. Ambler Realty Co.,
272 U. S. 365, 47 Sup. Ct. Rep. 114, 71 L. Ed. 303, said:
"The inclusion of a reasonable margin to insure effective
enforcement will not put upon a law, otherwise valid, the
stamp of invalidity. Such laws may also find their justi-
fication in the fact that, in some fields, the bad fades into
the good by such insensible degrees that the two are not
capable of being readily distinguished and separated in
terms of legislation."

What constitutes a nuisance is often a matter of the right
thing in the wrong place, said the same eminent jurist.
The margin allowed the Commissioners under the Jack-
sonville ordinance is not only narrow, but is hedged with
restrictions and limitations to such an extent that in any
case in which they may be called upon to act whatever of
apparent badness there might be in the use to which the
lot is sought to be put may be lost completely in the acqui-
escence of the people of the neighborhood as evidenced by
their lack of protest.

Whether the respondents will actually grant a permit
after application for it is made, petition filed, notice of
hearing given, public hearing obtained and absence of pro-
tests, is exceedingly doubtful. In any event, the threat-
ened affirmative action of the Commissioners is impossible
to assert, the discretion which they are to exercise being
within the scope of their powers. To say they are likely
to abuse the discretion and wrongfully grant the permit is

to rest the proceeding of *quo warranto* upon a hypothetical case. If it is true that such a proceeding will lie in the case of every officer who creates a fear in someone that the officer in a certain matter will exceed his powers, such officer might be subject to vexation and expense in exhibiting his authority in every matter in which he conceives that his duty calls.

The demurrer is sustained to the information and the writ denied.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.