110 So.2d 449 (1959)
CITY OF PUNTA GORDA, Florida, Appellant,
v.
Harold F. MORNINGSTAR and Illah Morningstar, his wife, Appellees.
No. 947.
District Court of Appeal of Florida. Second District.
April 3, 1959.
John M. Hathaway, Punta Gorda, for appellant.
Earl Drayton Farr, Jr., of Farr & Farr, Punta Gorda, for appellees.
ALLEN, Judge.
The appellant was the defendant below and appeals from a summary judgment wherein the lower court held a zoning ordinance invalid. The decree also enjoins the appellant from interfering with the plaintiffs-appellees' building a filling station and also requiring the appellant to issue the necessary building permits.
The plaintiffs, Harold F. Morningstar and Illah Morningstar, his wife, filed a complaint alleging in effect that they were the owners of certain described property in the City of Punta Gorda; that the city had adopted a zoning ordinance prescribing the use to which certain property could be used or adapted within certain districts or zones; that Section 26-13 provides, "in a main business district land may be used and buildings or structures may be erected, altered or used, subject to the building code then in effect, for any purpose except the following: * * * (8) Motor vehicle service or filling station or public garage"; that the only area in the city which now *450 has filling stations is the "D" main business district along U.S. Highway 41 also known as the Tamiami Trail; that the plaintiffs have made application for a building permit to build a filling station on the above described property, which has been denied or refused on the ground that it is prohibited under the zoning ordinance; that the ordinance discriminates against these property owners as it prohibits the use of the land for which it is best adapted, and further grants a monopoly to those now in the business and violates plaintiffs' property rights as guaranteed by the State of Florida; and that the ordinance is an arbitrary and unreasonable use of legislative power when applied to the locus in question and places restrictions on private property which are not necessary for the public welfare.
The answer of defendant city was, in effect, a general denial of various paragraphs of the complaint and in paragraph 5 the following was stated:
"5. And for further answer to the Complaint and each and every allegation therein, Defendant avers the Plaintiff ought not to be admitted to complain of Section 26-13 of the code of ordinances of the City of Punta Gorda, Florida, for the reason that the same was passed and adopted on or about November 17, 1953, which was prior to the acquisition of said property by said Plaintiffs, and with full knowledge by said Plaintiffs, at the time of purchase, that said ordinance was then in effect, and that passage of the same was a valid exercise of said City's Police Power with relation to the public safety, health, comfort and the general welfare of it's citizens."
The plaintiffs moved for a summary judgment on the pleadings and the following affidavit:
"Harold F. Morningstar, being first duly sworn, deposes and says:
"1. I am the Plaintiff in the above styled cause and have personal knowledge of the facts herein set forth. This affidavit is submitted in support of the Plaintiffs' Motion for Summary Judgment herein for the purpose of showing that there is in this action no genuine issue as to any material fact, and that the Plaintiffs are entitled to Judgment as a matter of law.
"2. I and my wife, Illah Morningstar, are the fee simple owners of the following described property located in the City of Punta Gorda, Charlotte County, Florida, to-wit: (description omitted) and that we have paid taxes on the same to the City of Punta Gorda which they have accepted.
"3. That the above property is in the main business district of the City of Punta Gorda on U.S. 41; that the only area in the City of Punta Gorda which now has filling stations for vehicular traffic, that is, other than boats and private commercial uses, is all on U.S. 41, also known as the Tamiami Trail.
"4. That I filed, through my Attorney, an application for a building permit and paid the fee, and the City Council refused me this permit on the grounds that it is prohibited under the zoning ordinance, and for no other reason.
"5. That there are many filling stations in the City of Punta Gorda, north and south of my property, on U.S. 41; that the best use of this property is for a filling station; that the building will be built in a safe and prudent manner, as will be required by the Building Code."
The Punta Gorda Code shows that Chapter 26 is the zoning chapter. Section 26-3, among other things, designates six types of districts as follows:
A  Residence districts.
B  Residence districts.
C  Residence districts.
D  Main business districts.
*451 E  Industrial Districts.
F  Parks or proposed parks.
Section 26-13 "D"  Main Business District, provides:
"In a main business district, land may be used and buildings or structures may be erected, altered or used, subject to the building code then in effect, for any purpose except the following:
"Prohibited Uses
"(1) Repair shops, not in the rear of a retail store.
"(2) Storage of flammable oils exceeding in amount one fifty-gallon drum of ten five-gallon metal containers of each kind for retail sales.
"(3) Storage of fireworks or other explosives.
"(4) A mercantile business, the major part of which is wholesale.
"(5) * * *
"(6) * * *
"(7) * * *
"(8) Motor vehicle service or filling station or public garage.
"(9) * * *".
Section 26-20.1, Non-conforming uses (a) provides:
"The lawful use of land existing on November 17, 1953, although such use does not conform to the provisions hereof, may be continued; but if such non-conforming use is discontinued for a period of two years, any future use of such land thereafter shall be in conformity with the provisions of this chapter."
Thereafter other provisions as to non-conforming uses are stated in the zoning code.
The defendants filed a motion to dismiss which, among other grounds, states, "That the Complaint fails to show that the plaintiffs have exhausted their administrative remedies, before the Board of Adjustment Appeals of said city, under Article V, Section 26-43 of said Code, and in compliance with Chapter 176, Florida Statutes, 1957 [F.S.A.]."
The court, by its order, overruled the defendant's motion to dismiss, the court stating:
"* * * The Court further finds that Plaintiffs did not have to first proceed before the Board of Adjustment of the City of Punta Gorda for to do so would be a useless and futile act, and it is therefore not required by law."
Since we shall reverse the summary judgment, we believe a study of the following case may be important on the question of a failure to exhaust administrative remedies. See Hennessy v. City of Fort Lauderdale, Fla.App. 1958, 101 So.2d 176.
The defendant city in the present case filed affidavits by its city engineer and by the superintendent of water works of the city primarily to show that the use of the property for a filling station would be a violation of the zoning code and a health and fire hazard to the city if such filling station should be built.
The court's order declaring the ordinance invalid in a summary proceedings, insofar as it prohibits a filling station on the plaintiffs' property, without the trial of any issues of fact overlooking the presumptive validity of the zoning ordinance and, in effect, rezoning the property to permit the use of the particular property for a filling station, usurps the power of the zoning board of the city.
Apparently the lower court was of the opinion that even though the plaintiffs had bought their property subsequent to the passage of the zoning ordinance prohibiting use of the particular property for a filling station, the zoning ordinance violated the *452 constitutional rights of the plaintiffs by virtue of its being discriminatory. The basis in the record, apparently, for the lower court's surmise was that the plaintiff could not build a filling station on his property while there were other properties in the city that had filling stations thereon, and that, therefore, the ordinance would be ipso facto void because of this fact.
Nearly every city that has adopted a comprehensive zoning ordinance has been faced with the fact that scattered throughout the city were various uses of property which should be prohibited in the immediate zoning area, but due to the economic loss of the individual that was so using his property, this use was authorized to continue as a non-conforming use either indefinitely or for a number of years. This fact did not prohibit the city from zoning the property in that vicinity from the same uses on the part of persons subsequently attempting to use the property for the prohibited zoning use.
The wide variety of zoning acts and regulations affecting filling stations may be seen from the hereinafter quoted authorities:
Charles S. Rhyne, Municipal Law, (1957) § 32-53, at page 961, states:
"Gasoline filling stations may be regulated or prohibited in certain zones, such as residential zones; apartment use zones; a business district; industrial zone; or other specified zones, unless approved by the city council or other sepcial authority; or within specified distances of playgrounds, schools and churches. Even in a district in which filling stations are permitted under the zoning ordinance, a permit may be denied therefor if the station would increase traffic hazards, create dangers for children, emit noise and odors, and adversely affect property values, in the absence of a counter-balancing public demand for another service station in the vicinity. And the denial of a permit based on these reasons may not be upset by the courts. However, a statute may limit the power of a council to deny a permit in a permitted zone to one reason only, i.e., that the sale of gasoline on the proposed site will unduly imperil the safety of the public. * * * And the rezoning from commercial to apartment use, and from business to residential, so as to prevent a gasoline filling station in those zones has been upheld. Yet, the nature of the surrounding area may prevent the rezoning to residential uses which would exclude gasoline service stations * *.
"Grants of variances to permit gasoline filling stations in a residential zone, partly in a multiple-family residence zone and partly in a business zone, in a retail use district, and in a business use district have been upheld. Conversely, the grant of a variance to permit construction of a gasoline filling station has been reversed on the law and the facts, and another such grant has been reversed for failure to give notice of the variance hearing to all persons owning realty within 100 feet of the proposed variance. * * *"
In 2 Yokley, Zoning Law and Practice, § 229, 2d Ed., at page 119, it is stated:
"Decisions adjudicating rights in and to the use of certain properties in the various zones for gasoline filling stations are numerous. Many of these decisions have to do with the question of whether a zoning board or legislative body should permit a filling station in a residence district. Since different factual situations are always presented, the decisions, of course, are not in harmony.
"There are, of course, situations presented where filling stations may lawfully be placed in a residence district. Such was the situation in the case of Gelinas v. City of Portsmouth [97 N.H. 248], *453 85 A.2d 896. Here a variance was upheld which permitted a filling station in a residential zone where the lot bordered on a new super-highway, was swampy and unfit for the uses for which zoned, and was valuable only for commercial uses.
"The same general restrictions against the operation of garages in residence and light commercial areas, applies with equal force to filling stations. As in the case of garages, filling stations can be lawfully kept a certain distance from schools and churches. A board of adjustment may not refuse a permit for a gas station at an intersection solely because it might create a traffic hazard where it is obvious that no such hazard would be created.
* * * * * *
"An ordinance may lawfully require the discontinuance of a site used as a filling station, where reasonable notice is given."
In 2 Metzenbaum, Law of Zoning, 2d Ed., at page 1467, it is stated:
"The decisions covering the subject of garages, gasoline and filling stations, service stations, automobile parking facilities, automobile repair shops and the like, are almost numberless."
Following the above quotation the author discusses the question of filling and gasoline stations and garages for some 32 pages showing the holdings of the courts over the nation under various circumstances in zoning businesses of this type.
Antieau, Municipal Corporation Law, Volume 1, Section 7.02 summarizes the reasoning of the various State Courts in this regard as set out in the brief of appellant as follows:
"The validity of every Zoning Ordinance is to be tested as applied to a particular piece of property at a particular time. A California Court has well said: `It is well established that the question whether a Zoning Ordinance is unreasonable, arbitrary and discriminatory, is related to its application to the particular property involved. It may be valid in its general aspects as to some properties and invalid as to others.' Morris v. City of Los Angeles [116 Cal. App.2d 856], 254 P.2d 935, 939.
"Similarly, the Illinois Supreme Court indicates:
"`In ascertaining whether a particular Zoning Ordinance is in the interest of the public, each case must, of course, be determined on its peculiar facts.' Trust Co. of Chicago v. City of Chicago [408 Ill. 91], 96 N.E.2d 499, 504.
"The orthodox statement is to the effect that Zoning Ordinances are entitled to presumption of validity, reasonableness and constitutionality. [City of] Miami v. Rosen [151 Fla. 677], 10 So.2d 307.
"An Ohio Court typically stated: `The strong presumption of validity which applies to Legislative Acts in general, applies with equal force to Zoning Ordinances.' Cleveland Trust Co. v. Village of Brooklyn [158 Ohio St. 258], 108 N.E.2d 679.
"And the Connecticut Court holds that: `A Zoning Ordinance will be held invalid only if it is palpably unjust, unreasonable or arbitrary.' Fairlawns Cemetery Ass'n v. Zoning Commission of Town of Bethel [138 Conn. 434], 86 A.2d 74, 78.
"And it is equally well settled that one who would tax the validity of a Zoning Ordinance has the burden of proving it unreasonable. State Ex Rel. Prats v. City Planning and Zoning Commission of City of New Orleans [La. App.], 59 So.2d 832; State v. Mundet Cork Co[rp.] [8 N.J. 359], 86 A.2d 1.

*454 "Where there is any doubt as to the reasonableness of a Zoning Ordinance, all doubts will be resolved in favor of the validity of the Ordinance, the Florida Supreme Court typically announces:
"`* * * In case an Ordinance dealing with the property zoned is the subject of dispute, the Court will not substitute its judgment for that of the municipality but will sustain the Legislative intent of the Ordinance if the matter is fairly debatable.' City of Miami Beach v. Hogan [Fla.], 63 So.2d 493, 494, certiorari denied 346 U.S. 819, 74 S.Ct. 33, 98 L.Ed. [346]."
It can readily be seen from the cited authorities that it is a question of fact as well as law whether vel non a zoning act as applied to specific property is invalid.
We are of the opinion that the court erred in determining that the zoning ordinance was invalid as to the plaintiffs' property on a summary procedure and we shall reverse this case for further proceedings in the court below on a trial of the issues made by the pleadings.
If the court, on a final hearing, should determine that the zoning regulation as to the particular property of the plaintiffs was too restrictive, then the court should direct the zoning authorities to rezone the particular property for a use less restrictive than the uses permitted under the present zoning acts.
The Supreme Court of Florida in several opinions has stated that it is not the function of a court to zone property, that having determined that a particular piece of property is improperly zoned, the matter should be resubmitted to the zoning authorities to determine the proper classification of the property for zoning purposes.
In the case of Quattrocchi v. MacVicar, Fla. 1955, 82 So.2d 873, 874, the Court, in its majority opinion, affirmed the lower court on the basis that the lower court's decree in favor of the property owner was subject to two interpretations. The Court, in effect, determined that the decree did not rezone the property, but left the way open for the city to rezone their property in a proper classification. However, the court did state that courts should not substitute their judgment for that of the city zoning authorities in the matter of promulgating zoning regulations unless some constitutional right of the landowner was involved. In this case Justice Thornal, in an opinion concurring in part and dissenting in part, stated that since the lower court said what the classification should be, although not actually reclassifying the property, "it appears * * * by this provision the [lower] Court undertakes to substitute its judgment for that of the municipal zoning authorities contrary to the rule announced in City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493."
In the case of City of Tampa v. Consolidated Box Company, Inc., Fla.App., 110 So.2d 446, this court affirmed in part and reversed in part the Circuit Court of Hillsborough County, where the court had held invalid a classification of the plaintiff's property as "C-1," which was defined in the ordinance as "neighborhood commercial district" but proceeded to rezone the property as a class "C-2" or "general commercial district." We held that the lower court was in error in attempting to rezone the property and should amend its decree to the extent of requiring the City of Tampa to rezone the plaintiff's property in a classification less restrictive than the "C-1" classification held invalid in the lower court.
Case reversed for further proceedings not inconsistent with this opinion.
KANNER, C.J., and SHANNON, J., concur.