123 So.2d 738 (1960)
Walter WOOD et al., Appellants,
v.
TWIN LAKES MOBILE HOMES VILLAGE, INC., Appellee.
Ellsworth SIMMONS et al., Appellants,
v.
TWIN LAKES MOBILE HOMES VILLAGE, INC., Appellee.
Nos. 1852, 1857.
District Court of Appeal of Florida. Second District.
October 28, 1960.
*739 David G. Hanlon, Macfarlane, Ferguson, Allison & Kelly, Tampa, and Robert S. Edwards, Plant City, for appellants.
Forrest O. Hobbs, Tampa, for appellee.
ALLEN, Chief Judge.
This is an appeal from a final decree declaring the zoning classification of 15 acres and two adjoining tracts of land located in Hillsborough County to be arbitrary, unreasonable and void as applied to the subject property. The county and certain intervenors (adjoining property owners) have taken this appeal, contending that the appellee failed to exhaust its administrative remedies prior to seeking judicial relief and that the lower court erroneously substituted its judgment for that of the county zoning authority.
The plaintiff corporation owns 15 acres plus tracts 5 and 8 immediately to the south of the 15 acres for future expansion of the planned trailer park. The property is bounded on the north by Lake Fern Road, on the east by Lake Elizabeth, on the southwest by Lake Wood, and one-half mile to the west is Gunn Highway with the Seaboard Railroad tracks parallel thereto.
There is little, if any, commercial development in the area nor is there any commercial development to the north along Lake Fern Road. Several acres of the land was formerly in groves but most of this land has since been periodically cleared for residential use.
The plaintiff corporation in March, 1958, decided to purchase the land in question for the purpose of erecting a luxury trailer park thereon and, after consulting with counsel, it was discovered that the owner was involved in a lawsuit with the county over a road right-of-way. This suit was terminated on May 23, 1958, in favor of the owner. The plaintiffs and their counsel checked with the zoning authorities and were advised by the authorities that there was no zoning in that area and that no permit was needed to begin clearing and construction.
After no appeal was taken in the right-of-way case, the plaintiffs took a 60 day option on the property on August 7, 1958, with a right to renew the option for 60 days at a purchase price of $56,500. On September 30, 1958, the plaintiffs incorporated under the name of Twin Lakes Mobile Home Village, Inc. On October 7, 1958, the plaintiff was again advised by the county that the property was not subject to any zoning regulation. After the engineering surveys for the trailer park were completed and after being advised by the county that no zoning would be enacted until December, 1959, the plaintiff purchased the land on December 1, 1958.
On March 6, 1959, the plaintiff began clearing the land and subsequently purchased a license to operate a trailer park. Certain buildings, valued at $6,000, were removed and $14,000 was expended in clearing and filling the land.
On October 3, 1958, the county had enacted a zoning regulation which contained *740 no restriction pertaining to plaintiff's land. On May 22, 1959, the county enacted an amendment to the zoning regulation which zoned plaintiff's land R-2 or residential. The plaintiff protested as did the parties who were to sell to plaintiff tracts 5 and 8, which were south of plaintiff's land. The zoning director promised remedial action but none was forthcoming. In holding the zoning regulation unconstitutional in its application to plaintiff's land, the chancellor found that:
"That the plaintiff, at the time of the passage of said zoning ordinance, had begun construction of a trailer court, and after the passage of the ordinance was advised by the public officials of Hillsborough County that it could not continue the development of the property for that purpose.
"The property is located over twenty miles from the city of Tampa. There are a number of lakes of various sizes in the area. It is generally a very sparsely settled woodland area, which has shown very little growth in the past fifteen years, but which, in the past several years, has begun to attract summer and year round residents. The subject property is entirely surrounded by wild land and orange groves and the area is predominately agricultural.
"The placing of this property in zone R-2, which is one and two family residential district, is unjust, arbitrary and unreasonable and is without regard to the conditions existing and has no relation to the public health, safety, morals or general welfare of the area involved. The use of this property as a trailer park with modern sanitary and sewage disposal facilities would not adversely effect the public health, safety or morals of the area. Aesthetic consideration alone for the general welfare is not sufficient in this case to deprive a party of the full lawful use of his property. It should be noted that the present zoning would even prevent the use of this property for any additional agricultural purposes. This appears to be entirely too restrictive and unreasonable under existing conditions * *."
The plaintiff alleges in its complaint that the present classification of its property constitutes a violation of due process of law in that the R-2 or residential classification of its property constituted an arbitrary and unreasonable classification. The plaintiff is challenging the ordinance only insofar as it prevents a particular use (the erection of a trailer park) of its property but does not otherwise question its validity.
It is well settled that a party aggrieved by the application of a statute or ordinance must invoke and exhaust the administrative remedies provided thereby before he may resort to the courts for relief. Hennessy v. City of Fort Lauderdale, Fla.App. 1958, 101 So.2d 176; DeCarlo v. Town of West Miami, Fla. 1950, 49 So.2d 596; 1 Fla.Jur., Administrative Law, § 175. The appellants contend that plaintiff did not comply with this rule since it did not petition the Board of Adjustment to have its property excepted from the restrictions of the challenged zoning ordinance pursuant to Florida Laws 1953, Ch. 29131, § 4. On the other hand, appellee contends that the doctrine of exhaustion of administrative remedies does not require it to follow the procedure prescribed by an ordinance which it alleges is void as to its property.
We note again at this point that appellee only challenges the ordinance as it applies to its property for appellee states in its brief:
"Although rural zoning has in cases been approved by the Court and we will make no frontal assault upon the entire ordinance, Plaintiff-appellee is only attacking the ordinance as it affects Plaintiff's property." (Emphasis added.)
*741 Where an ordinance is attacked as being unconstitutional in its entirety, the authorities from other jurisdictions are divided as to the necessity of invoking administrative remedies prescribed by that ordinance. See Porter v. Investors' Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226; 1 Metzenbaum, Law of Zoning, 1955 Ed., Chapter IX-e, and cases collected therein. It has been held in Florida, however, that where there is a general attack on the validity of an ordinance, in its entirety, it is not necessary to pursue the administrative review or appeal prior to seeking judicial relief. Hennessy v. City of Fort Lauderdale, supra; City of Miami Beach v. Perell, Fla. 1951, 52 So.2d 906; City of Miami Beach v. Daoud, 149 Fla. 514, 6 So.2d 847. But where, as in the instant case, the ordinance is alleged to be unconstitutional only as applied to particular property before a party can make such an attack, he must apply to the zoning authorities for an exception or variance under the act. DeCarlo v. Town of West Miami, supra; Hennessy v. City of Fort Lauderdale, supra; and see also City of Punta Gorda v. Morningstar, Fla.App. 1959, 110 So.2d 449.
The subject ordinance appears in Florida Laws, 1947, Ch. 24592, as amended Florida Laws 1953, Ch. 29131 and the provisions relating to the powers of the Board of Adjustment are as follows:
"The Board of Adjustment shall have the following powers:
"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, determination or action of any administrative official charged with the enforcement of the provisions of this Act and of any regulations or restrictions made under authority hereof, unless such order, requirement, decision, determination or action shall have occurred pursuant to an order or resolution of the Board of County Commissioners specifically directing such administrative official concerning the same.
"(2) To authorize upon appeal in specific cases such variances from the terms of the regulations or restrictions as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions thereof will result in unnecessary hardship, and so that the spirit of the regulations or restrictions shall be observed and substantial justice done.
"In exercising the above mentioned powers, the Board of Adjustment may reverse or affirm, wholly or partly, or may modify any decision, or action of any administrative official charged with the enforcement of the provisions of this Act and of regulations or restrictions made under authority of this Act, and may make such decision or take such action as such administrative official should have made or taken. To that end it shall have the powers of the administrative official from whom the appeal is taken. In order to reverse any decision or action of such administrative official, the concurring vote of not less than three (3) members of the Board of Adjustment shall be necessary.
"The Board of Adjustment shall have no jurisdiction to hear appeals from decisions of the Board of County Commissioners made in specific cases, nor shall it have any power to zone or to permit uses in any district contrary to the general character of use permitted by the zone classification of such district.
"Any person or persons, jointly or severally aggrieved by any decision of the Board of Adjustment, or any taxpayer or any officer, department, board or bureau of such county may, within thirty (30) days after the filing of any decision in the office of the Board *742 of Adjustment, but not thereafter, apply to the courts for relief."
The appellee alleges in its brief that it applied to the county commission to have the property rezoned agriculture and/or C-2, but the commission denied this request and that under the fourth paragraph of the above-quoted act, the Board of Adjustment would not have had jurisdiction even if appellee had pursued that remedy. There is no showing in the record that appellee applied to the county commission for consideration of this specific case. The following portion of the complaint was stipulated and agreed to in the pretrial order:
"That subsequent to the passage of said resolution by Defendants aforesaid, Plaintiff applied to have said property rezoned agriculture and/or C-2 and was denied. That the zoning administrator of Hillsborough County, Florida, has advised Plaintiff that they cannot continue construction, because he does not consider it an existing use." (Emphasis added.)
It would appear therefore from the above stipulation and, in the absence of any showing of a requested change before the county commission, that the instant review clearly falls within the purview of paragraph (2) of the Act which gives the Board of Adjustment power to authorize variances in cases "* * * where owing to special conditions, a literal enforcement of the provisions thereof will result in unnecessary hardship, and so that the spirit of the regulations or restrictions shall be observed and substantial justice done." In Kaeslin v. Adams, Fla. 1957, 97 So.2d 461, the Court upheld a county zoning Board of Adjustment granting a property owner a nonconforming permit. In the decretal portion of the per curiam opinion the Court noted that the reasons for the ruling appear in the concurring opinions, one of which is particularly relevant to the instant discussion. Associate Justice Taylor noted in regard to the function and power of a board of adjustment that there are two views. One is that such board may not authorize, under any circumstances, a business building in an area zoned for residences because to do so would constitute rezoning the property thereby invading the zoning powers of the agency which enacted the ordinance. In support of this view Justice Taylor cited the following: Real Properties, Inc. v. Board of Appeal of City of Boston, 319 Mass. 180, 65 N.E.2d 199, 168 A.L.R. 8; Lee v. Board of Adjustment of City of Rocky Mount, 226 N.C. 107, 37 S.E.2d 128, 168 A.L.R. 1. The contrary view, that the purpose of a board of adjustment is to relieve specific property from the letter of the zoning law and every variance is, in effect and practical operation, a rezoning of the property affected, is supported by cases collected in 168 A.L.R. 13. See also 62 C.J.S. Municipal Corporations § 227 (11), pp. 534-537; Scaduto v. Town of Bloomfield, 127 N.J.L. 1, 20 A.2d 649. Justice Taylor concludes in regard to which of these two views is followed in Florida by stating [97 So.2d 462]:
"Between these two views this Court has already settled the law of this state. In the case of State ex rel. Landis v. Valz, 117 Fla. 311, 157 So. 651, 654, the Court had before it a case involving a zoning ordinance of the City of Jacksonville in connection with the propriety of granting a permit to construct a dog racing track in a residential area. In considering that section of the ordinance relating to the granting of variances, the Court said:
"`Section 17 is a valid provision of the ordinance. It does not, as claimed, invalidate the ordinance by vesting in certain officers the power of legislation to rezone the city. The provision is necessary to give flexibility to the zoning ordinance and prevent it from being arbitrary to the point of unreasonableness. See State ex rel. Taylor v. [City of] Jacksonville, 101 Fla. 1241, 133 So. 114.'"
*743 The reason for this rule is clearly set forth by the Court in DeCarlo v. Town of West Miami, supra, by stating:
"The administrative boards usually provided for the consideration and review of zoning problems are made up of local people, having the advantage of full local information as to the reasons behind the various zoning regulations. Their findings, while not conclusive, are indeed helpful in the ultimate determination of the rights of the parties. Moreover, the inequalities of a zoning ordinance, if called to the attention of such local administrative boards, may frequently be adjusted at that level. Such boards should, at least, be given an opportunity to afford relief, or state their reasons for not doing so."
The appellee contends that under the holding of Josephson v. Autrey, Fla. 1957, 96 So.2d 784, 787, the board of adjustment would be without power to grant a variance in the instant case for to do so would constitute a rezoning of the property. In the Josephson case the plaintiff purchased a tract of land in an area zoned T-1 or for motels and tourist accommodations. The plaintiff applied for a permit to construct a filling station on the property. This application was denied on the ground that filling stations were not permitted in T-1 districts although they were permitted in T-2 districts. The plaintiff then appealed to the zoning board of appeals admitting that filling stations were not permitted in T-1 districts but alleged that his property would depreciate if he was not permitted to erect a filling station. The appeals board held a hearing at which protests were presented but the board authorized a variance for the plaintiff and directed the building inspector to issue the permit to erect the filling station.
An adjoining property owner petitioned the circuit court for an injunction alleging that the zoning board of appeals had no power to grant the requested variance. After a hearing on the merits, the chancellor dismissed the property owner's complaint with prejudice and held that the zoning board of appeals acted within its authority.
The property owner then appealed to the Supreme Court contending that the zoning board of appeals was without authority under its power to grant a variance to permit a use prohibited by the ordinance; and that the zoning restriction was a self-imposed hardship since the restrictions were in effect at the time the plaintiff completed the purchase of the land in question.
In reversing the lower court, the Supreme Court stated:
"* * * While admittedly there are some authorities which appear to the contrary, it is our view that the numerical weight as well as the better-reasoned decisions adhere to the rule that a zoning board of appeals does not have the power to effectuate a pro tanto amendment of the basic zoning ordinance by authorizing a nonconforming use in a zoning district where such use is unauthorized."
The Court, in the Josephson case also mentioned situations in which variances had been upheld such as: permitting excavation of a lake in a residential zone, Troup v. Bird, Fla. 1951, 53 So.2d 717; a holding that the granting of variances does not constitute a delegation of legislative power to rezone. State ex rel Landis v. Valz, 117 Fla. 311, 157 So. 651; and the granting of a variance to permit the continuation of a "nonconforming" use, Tau Alpha Holding Corp. v. Board of Adjustment, 126 Fla. 858, 171 So. 819. It is noted that the decision of reversal in the Josephson case was based on the principle of "selfcreated" hardship.
It was contended on rehearing in Kaeslin v. Adams, previously discussed herein, that the decision of that case conflicted with the prior decision in Josephson v. Autrey, supra. After reviewing this contention the Supreme Court held that there was no conflict *744 between the conclusions reached in the two cases.
We cannot agree with the appellee's contention that the holding of Josephson v. Autrey, supra, renders a board of adjustment powerless to act in situations where a literal adherence to the letter of the ordinance would produce a unique or special hardship on the particular property owner. But on the contrary, Justice Thornal stated what must be shown in seeking administrative relief by stating [96 So.2d 789]:
"* * * In order to place in motion the exercise of the variance powers of a board of adjustment, the applicant must show that a strict application of the zoning ordinance produces a unique or unnecessary hardship with reference to his parcel of land. * * *"
It has long been established that in judging the merits of zoning controversies, the extenuating facts and circumstances peculiar to the particular case will govern the outcome. Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406. Moreover it is the unique nature of each zoning controversy that makes it necessary and expedient to have a reviewing board of adjustment where the aggrieved parties may seek relief first from unjust and arbitrary results that may occur in isolated cases under a general comprehensive zoning plan.
Any discussion as to the merits of possible administrative remedies available in the instant case would be premature at this time. As we have stated previously, the appellee attacked the validity of the zoning ordinance only as applied to its land. We therefore conclude that the cause must be reversed on the ground that appellee failed to exhaust its administrative remedies under the ordinance and therefore the instant suit should have been dismissed.
We deem it appropriate to note in conclusion that the lower court, after finding the subject ordinance invalid, decreed in regard to the land in question:
"* * * The Board of County Commissioners of Hillsborough County may rezone the same if desired, but not as to prevent the use of said property as a trailer court and/or mobile home village."
The Supreme Court of Florida in several opinions has stated that it is not the function of a court to zone property and, that having determined that a particular piece of property is improperly zoned, the matter should be re-submitted to the zoning authorities to determine the proper classification of the property for zoning purposes. See City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493; Quattrocchi v. MacVicar, Fla. 1955, 82 So.2d 873; and City of Miami Beach v. Wiesen, Fla. 1956, 86 So.2d 442. This court has likewise held that rezoning is not a duty of the court but the duty of the zoning authorities. City of Tampa v. Consolidated Box Co., Fla. App. 1959, 110 So.2d 446; City of Punta Gorda v. Morningstar, Fla.App. 1959, 110 So.2d 449. Inasmuch as this cause must be reversed, further discussion of this issue is not warranted at this time.
Having failed to exhaust its administrative remedies, the plaintiff's suit was prematurely filed, and the lower court was in error in denying the defendants' motion to dismiss. For the reasons stated, the final decree appealed from should be and it is hereby reversed with directions to dismiss the cause.
Reversed.
KANNER and SHANNON, JJ., concur.