557 So.2d 652 (1990)
LEE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
Orlando MORALES and Elba E. Morales, Husband and Wife and Roberto Morales and Ofelia Morales, Husband and Wife, Appellees.
No. 89-01014.
District Court of Appeal of Florida, Second District.
February 28, 1990.
James G. Yaeger, County Atty. and John J. Renner, Asst. County Atty., Fort Myers, for appellant.
Thomas M. Brondstetter, P.A., Fort Myers, for appellees.
RYDER, Acting Chief Judge.
Lee County appeals an amended final judgment in which the trial court invalidated a Lee County Board of County Commissioners' rezoning decision. We reverse.
*653 In 1978, appellees purchased four undeveloped lots in La Costa Isles subdivision for $43,000.00. The subdivision is located on the barrier island of Cayo Costa. At that time, the land was zoned C-2 (commercial) under the county zoning regulations. Under this classification a permitted use was light industrial. Appellees purchased the property as an investment and intended to construct a restaurant and a marina upon it. However, before they proceeded with these plans, the County levied a moratorium on development.
In 1979, the County adopted a Comprehensive Plan to guide development and land use. In 1981, the state of Florida adopted the Charlotte Harbor Management Plan. That same year, the County commissioned an expert to study Lee County's coastal and island ecosystems, development, and land use. The expert's study concluded that Cayo Costa should be preserved and development should be prohibited. The reasoning for this recommendation was to preserve the island's historical, archaeological and recreational resources, to protect the environment, to protect the adjoining aquatic preserve, and to guard against the danger posed to development from hurricane storm damage and flooding. Based upon this study, the Lee County Board of County Commissioners requested its planning staff to conduct a comprehensive planning assessment of Cayo Costa.
In 1982, the planning staff presented its comprehensive planning assessment, which described Cayo Costa as one of the last undeveloped and unprotected barrier islands of large size in the United States. The island is seven miles long, between 1 1/2 to 0.1 miles wide, totals 2,236 acres, and contains nine miles of beaches. The island is not accessible by road, does not have any public utilities or emergency services, and potable water is scarce. There are no plans for extending utilities or other public services to Cayo Costa. The island is in a constant state of change, and is subject to severe storm damage and shifting patterns of erosion and accretion. It was divided into two sections during the no name storm in June of 1982. Cayo Costa is adjacent to the Pine Island Aquatic Preserve and is classified as requiring the highest environmental protection for water under state regulations. The island contains 309 species of plant life, of which four are threatened or endangered. It also contains 100 species of bird and animal life, of which five are threatened or endangered animal species, and seven are threatened or endangered bird species. Additionally, the island contains two Calusa Indian mounds and a cemetery from the Cuban settlement period.
Presently, land use on the island consists of a 651-acre passive recreation facility operated by the County, a 715-acre state preserve and 813 acres of privately owned wild land containing twenty scattered homes and cabins, only of which three to five are permanently occupied. From 1963 until 1971, there were nine rezonings to permit various commercial and multifamily uses, however, actual land use on the island has remained the same since 1963.
The planning staff concluded that development would endanger the unique environmental, archaeological, historical, and recreational resources on the island and also endanger the natural resources of the adjoining estuary. The assessment recommended that development on Cayo Costa be limited due to the fact that the island is undeveloped, lacks public services, and there is danger to life and property because of hurricanes. Out of twenty-seven specific recommendations contained within the assessment, one was that land presently zoned commercial be rezoned. Effectively, this recommendation would require approximately 100 acres to be rezoned, which included appellees' property.
The Board of County Commissioners considered the planning staff's assessment and recommendations and concluded that the existing zoning classifications on the island were totally inappropriate. The Commissioners directed its zoning staff to conduct a comprehensive rezoning requiring all land not zoned residential to be rezoned back to agricultural/rural residential, under which agricultural uses and single family homes on one-acre lots would be permitted. Where a lot was less than *654 one acre, lot size variances were to be made available to construct a single family home.
Appellees and other property owners opposed the rezoning at a hearing before the Lee County Zoning Board. Nevertheless, the Board found that the rezoning request was valid and voted five-to-one to grant the request. The Zoning Board recommended that property owners seek the available variances from the mandated lot sizes.
In March of 1983, the Board of County Commissioners, sitting as the Zoning Appeals Board, considered the appeal by appellees and other property owners of this decision and upheld the findings of by a vote of five-to-zero. The Board of County Commissioners accepted and adopted the factual presentations made by the county planning staff, accepted the findings made by the Zoning Board, and adopted a rezoning resolution which had the effect of rezoning the property from commercial to agricultural. The County subsequently adopted a comprehensive land use plan which provided for a single family residence provision to permit land owners to develop a single family home on each recorded lot within a subdivision.
Appellees' complaint against Lee County alleged that the rezoning decision was arbitrary, capricious, confiscatory, not fairly debatable, denied appellees of any reasonable use of their property, was a taking of property without just compensation, inversely condemned the property, and denied them equal protection of the law. Appellees also alleged that they were entitled to damages under Title 42 U.S.C. § 1983.
At the close of appellees' case during the nonjury trial, Lee County filed a motion for involuntary dismissal on the ground that appellees failed to apply for a variance or other available administrative relief, therefore, the action was premature. The court denied the motion.
At the close of the trial, the court entered an amended final judgment holding that the Board of County Commissioners' rezoning decision was arbitrary, capricious, unreasonable and invalid. The court ordered the county commission to either reinstate commercial zoning or to rezone the property to residential. The court also ruled that the zoning decision inversely condemned appellees' property and violated their rights to substantive due process and equal protection. The court then ordered Lee County to pay appellees $66,590.00 in temporary taking damages plus attorney's fees and costs.
On appeal the County argues that before bringing suit, appellees were required to have exhausted their administrative remedies by applying for a variance, which they admittedly failed to do. We agree and rule that before appellees could properly challenge the constitutionality of the rezoning decision, it was incumbent upon them to apply for a variance which was readily available to property owners similarly affected by the rezoning decision. Although it is correct that a landowner may make a general attack on the validity of an ordinance without exhausting administrative remedies, David v. City of Dunedin, 473 So.2d 304, 306 (Fla. 2d DCA 1985), where an ordinance is alleged to be unconstitutional only as applied to particular property, there must be an application for a variance or exception before a party may seek judicial review. Wood v. Twin Lakes Mobile Homes Village, Inc., 123 So.2d 738, 741 (Fla. 2d DCA 1960). Accordingly, where an owner has not applied for a variance, a suit for injunctive relief is premature. City of South Miami v. Shirley Homes, Inc., 291 So.2d 40, 42 (Fla. 3d DCA 1974). In this case, the trial court should have required appellees to exhaust their administrative remedies. However, inasmuch as the trial court took jurisdiction of this case and proceeded to rule on the merits, we feel compelled to address these issues.
Even had appellees exhausted their administrative remedies and the trial court had come to the same result, we would have in any event reversed because the action of the Board of County Commissioners was fairly debatable and the circuit court erred in not so holding. Courts are not empowered to act as super zoning boards. City of Naples Airport Authority *655 v. Collier Development Corp., 513 So.2d 247, 249 (Fla. 2d DCA 1987); Broward County v. Capeletti Bros., 375 So.2d 313, 316 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980). Rather, because zoning is basically a legislative function, courts enter the area only where the action of a zoning body is so unreasonable and unjustified as to amount to a confiscation of property. Town of Hialeah Gardens v. Hebraica Community Center, Inc., 309 So.2d 212, 214 (Fla. 3d DCA 1975). Accordingly, the standard of review in circuit court is not to determine proper zoning, but whether the zoning authorities decision is fairly debatable. Broward County v. Capeletti, 375 So.2d at 315.
The trial court should uphold the zoning authority's decisions where the issue of reasonableness is fairly debatable. Gautier v. Town of Jupiter Island, 142 So.2d 321, 325 (Fla. 2d DCA 1962). However, before a court can substitute its judgment for that of the zoning authority, it must find that the question before the authority was not fairly debatable. City of Jacksonville v. Culverhouse, 498 So.2d 618, 619 (Fla. 1st DCA 1986) (circuit court failed to make findings that denial of rezoning was fairly debatable or that denial deprived owner of all beneficial use of the property). In this case, the trial court failed to make any findings that the rezoning was not fairly debatable and that the rezoning denied appellees all beneficial use of their property.
In order to show that an ordinance is fairly debatable, it is only necessary that there is competent, substantial evidence to support the zoning authority's decision. City of Naples Airport Authority, 513 So.2d at 249. The record in this case reveals that there was substantial, competent evidence upon which the Zoning Board based its decision to rezone the property on Cayo Costa. Protection of environmentally sensitive areas and pollution prevention are legitimate concerns within the police power. Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1381 (Fla. 1981), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981) (regulation promoted public welfare, prevented public harm, and was not arbitrarily applied) See also City of Tampa v. Speth, 517 So.2d 786, 787 (Fla. 2d DCA 1988) (aesthetic and historical concerns and concern of long term effect on traffic patterns if rezoning request is granted shows zoning body did not act arbitrarily or unreasonably in denying request). Thus, the Zoning Board was appropriately concerned with limiting the effects of future commercial development on Cayo Costa in view of legitimate environmental concerns, public safety concerns, and concern for preserving the island's aesthetic, historical, and archeological characteristics.
An owner of private property is not entitled to the highest and best use of the property if the use will create a public harm. Graham, 399 So.2d at 1382. In this case, zoning authorities properly relied upon the abundance of information gathered by experts that further commercial development on the island would harm the environment and create public safety problems. When faced with this potentially negative scenario, which is clearly a legitimate public concern, there was no obligation to zone the property simply to advance the property's best use or guarantee its highest salability. City of Tampa v. Speth, 517 So.2d at 787. In fact, just because the property may have higher value under different zoning is simply not a determining factor in judging the validity of a zoning authority's action. Friedland v. City of Hollywood, 130 So.2d 306, 307 (Fla. 2d DCA 1961). Thus, although appellees may have purchased the property as an investment with plans of building a marina under the commercial zoning which existed at that time, the mere purchase of land did not create a right to rely on that zoning. Walker v. Indian River County, 319 So.2d 596, 599-600 (Fla. 4th DCA 1975).
In light of the substantial, competent evidence regarding the potentially negative effects that future commercial development would have on the island, it is difficult to arrive at the conclusion that the rezoning is invalid because it is arbitrary, capricious and unreasonable. Under applicable case law, there is no legal support by *656 which the trial court could have reached this conclusion. On judicial review, it is the burden of the landowner to demonstrate that the challenged zoning is not fairly debatable, and is arbitrary, unreasonable or confiscatory. Broward County v. Capeletti, 375 So.2d at 315. A zoning ordinance cannot be held confiscatory unless it effectively deprives a property owner of all beneficial and reasonable uses of the property. Id. An ordinance is not confiscatory merely because one reasonable use is denied. Id. Therefore, appellees' argument that the rezoning of their property has deprived them of the expected benefit of their investment and from realizing the highest and best use of property, as opposed to all beneficial use of property, is irrelevant to the proper disposition of this issue. City of Jacksonville Beach v. Grubbs, 461 So.2d 160, 162 (Fla. 1st DCA 1984), review denied, 469 So.2d 749 (Fla. 1985).
The final judgment also erroneously ordered the County to rezone appellees' property and, therefore, violates the separation of powers doctrine. Palm Beach County v. Tinnerman, 517 So.2d 699, 700 (Fla. 4th DCA 1987), review denied, 528 So.2d 1183 (Fla. 1988); Town of Longboat Key v. Kirstein, 352 So.2d 924, 925 (Fla. 2d DCA 1977), cert. denied, 364 So.2d 887 (Fla. 1978). When a court determines property has been improperly zoned, the matter should be resubmitted to the zoning authorities to determine the proper zoning classification. Wood, 123 So.2d at 744.
Lastly, a zoning change cannot give rise to a cause of action for inverse condemnation. Pinellas County v. Ashley, 464 So.2d 176, 177 (Fla. 2d DCA), review denied, 475 So.2d 693 (Fla. 1985); Grady v. Lee County, 458 So.2d 1211, 1213 (Fla. 2d DCA 1984). Thus, even if the zoning ordinance were appropriately found to be confiscatory, appellees would not be entitled to a damage remedy. Where a zoning ordinance is held confiscatory, the only remedy available is to obtain a judicial determination that the ordinance is unenforceable and must be stricken. Pinellas County v. Ashley, 464 So.2d at 177; Grady, 458 So.2d at 1212-13; Dade County v. National Bulk Carriers, Inc., 450 So.2d 213, 216 (Fla. 1984). Therefore, the trial court erroneously awarded appellees $66,590.00 in temporary taking damages plus attorney's fees and costs.
Based upon the foregoing analysis, we reverse and remand for further proceedings consistent with this opinion.
SCHOONOVER and LEHAN, JJ., concur.